UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

GREGORY LEE CUTULI,

        Debtor.

_____/

MEHRDAD ELIE,

        Plaintiff,

v.

GREGORY LEE CUTULI,

        Defendant.

_____/

Case No. 17-05323-KRM
Chapter 7 Case


Adv. Case No.

**COMPLAINT TO DETERMINE THE NON-DISCHARGABILITY
OF CERTAIN DEBTS UNDER 11 U.S.C. § 523(a)(6)**

Plaintiff, Mehrdad Elie ("Plaintiff" or "Elie"), by and through his undersigned counsel, alleges as follows:

**JURISDICTION**

1.　　This adversary proceeding is one arising out of debtor Gregory Lee Cutuli's ("Debtor" or "Cutuli") Chapter 7 Case No. 17-05323-KRM that was filed under Title 11 of the United States Code (the "Bankruptcy Code") and is now pending before this Court.

2.　　This Complaint is brought under Rule 7001(6) of the Federal Rules of Bankruptcy Procedure.

3.　　This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. sections 151, 157 and 1334, in addition to Rule 7001-1 of the Local Rules promulgated by this Court.

4.　　This controversy is a core proceeding under 28 U.S.C. section 157(b)(2)(I).

## PARTIES

5.     Plaintiff is an individual residing in the City of Redwood City, County of San Mateo, State of California.

6.     Plaintiff is informed and believes that Cutuli is an individual residing in the City of Plant City, County of Hillsborough, State of Florida.

## FACTUAL BACKGROUND

7.     On November 25, 2009, Elie filed a Complaint to Set Aside Fraudulent Transfers, to Establish Alter Ego, Conspiracy, and to Impose Constructive Trust, as amended about July 30, 2010, against among others, the Debtor, which action was ultimately consolidated with numerous other actions filed by and against the Debtor (collectively the "Fraudulent Transfer Action").

8.     The Fraudulent Transfer Action was pending before the Napa County Superior Court, State of California, Case No. 26-53342 and was based upon an alleged broad conspiracy between the Debtor, his wife Kathleen Smith ("Smith"), a host of entities allegedly controlled by the two, and unnamed participants.  According to the Fraudulent Transfer Action, the Debtor was a critical piece of the broad conspiracy designed to hide the assets of Debtor's wife after a large adverse judgment was entered against her in a different court.

9.     Trial on the Fraudulent Transfer Action was set to commence on September 8, 2011 in the Napa County Superior Court in the State of California (the "Napa Court").  After assignment to a trial department, the Debtor's wife, Smith, filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Florida Bankruptcy Court"),  assigned Case No. 11-35256-AJC (the "Smith Bankruptcy Case"), and the Debtor asserted the automatic stay in the California case.   On or about September 15, 2011, the

Florida Bankruptcy Court ruled that the claims of Cutuli were not covered by the automatic stay and expressly granted relief from stay to permit claims against both Smith and Cutuli to proceed through judgment in the Fraudulent Transfer Action.  Trial in that action commenced September 26, 2011.

10.     On October 13, 2011, the Napa Court entered the Judgment After Trial For Equitable Relief, Injunction, Compensatory Damages and Punitive Damages against the Debtor, Cutuli and Entities in the Napa Case (the "Napa Judgment") finding Debtor and others liable for numerous fraudulent transfers, abuse of process, civil conspiracy, alter-ego, among other claims. The Napa Court awarded substantial compensatory and punitive damages, imposed a constructive trust, and awarded other equitable relief.  A true and correct copy of the Napa Judgment is attached hereto as **Exhibit A.**

11.     On October 13, 2011, the Napa Court entered an unusually explicit Statement of Decision After Court Trial (the "Statement of Decision"), a true and correct copy of which is attached hereto as **Exhibit B** and is incorporated herein. Among other extensive express findings against Debtor, the Napa Court found:

- "[the Debtor] appeared to be one of the greatest prevaricators the court had seen in over 30 years of experience.  The court finds that [Debtor] was evasive, contradicted himself, was impeached by his own prior testimony and by documentary evidence and appeared to the court to have committed perjury while testifying in trial."

- "The court heard substantial evidence suggesting [Debtor] and/or others engaged in the removal or destruction of evidence. . . engaged in, conspired to, or directed, the removal or destruction of evidence including 10 bankers-boxes of documents relating to Smith, Cutuli, and the various entities they controlled . . . as well as 5-6 truckloads of information and personal property . . . Cutuli also directed individuals at Pelican Brands to attempt to hide the existence of key documents relating to the sale of Napa Smith Brewery and Winery LLC's assets.  Based upon the foregoing, the court finds that with a culpable state of mind, Cutuli and his co-conspirators engaged in the destruction or suppression of evidence that was relevant to the proceeding . . ."

- "It appears to the court from the evidence adduced that [Debtor's wife's] counsel . . . participated in activities to further said acts of fraud."

3

- "A sufficient showing had been made at trial that the services of [Debtor's wife's counsel] had been 'sought or obtained to enable or aid [one or more individuals] to commit or plan to commit a crime or fraud.'"

- That the Debtor "had sent [a] large amount of money to [Debtor's wife's counsel] (during a time that [counsel] represented [Debtor's wife] and [Debtor] had pending [fraudulent] lawsuits against [Debtor's wife]), [and] testimony by [Debtor] that he "may have" provided funds to [his wife's counsel] to be "held" in the attorney's client-trust account."

- "[Debtor] eventually admitted to taking funds from [wife], admitted that he acted as a conduit for [wife], admitted that he had an "arrangement" with [wife] to handle her business affairs while she avoided an outstanding bench warrant, and admitted that he paid moneys to and received monies from [wife's] attorney . . .  The Court finds that [Debtor] and [wife] engaged in a fraudulent conspiracy to transfer funds away from the reach of creditors, to delay and hinder creditors and collection efforts, to fraudulently transfer funds to [Debtor] and other entities controlled by [wife] and [Debtor], and to hide funds."

- "The court finds that [wife's] transfer of three high-value automobiles (a Porsche, a BMW, and Tesla) to [Debtor] were made with actual intent to hinder, delay, and defraud Elie, and thus constitute actual fraudulent transfers."

- "The court finds that part of [Debtor's wife] and [Debtor's] conspiracy to avoid creditors, including Elie, involved using [Debtor's] lawsuit against his wife and co-conspirator as an instrumentality through which the couple could transfer assets from [wife] to her husband [Debtor].  The court finds that [wife], while working with [Debtor] to sell the couple's business, while engaging in numerous cash transactions with [Debtor], and while large sums of money flowed to and from [wife's] counsel . . . allowed [Debtor] to enter Judgment against her."

- "The court finds that in filing the [Debtor's lawsuit against his wife], filing the related *lis pendens*, opposing the motion to expunge the *lis pendens*, and causing default Judgment to issue, [wife] and [Debtor]: '(1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings'" [abuse of process].

12.    Based upon the Napa Judgment, Elie holds an unsecured claim in the amount of not less than $14,814,107.48 against Cutuli, plus interest accruing at the legal rate under California law of 10%.

13.    On July 31, 2014, the bankruptcy trustee in the Smith Bankruptcy Case settled her claims against Cutuli's wife's counsel for $2,000,000 in a non-confidential settlement agreement approved by that bankruptcy court.

4

14.     On April 8, 2016, the United States Attorney filed a Grand Jury indictment in the United States District Court for the Southern District of Florida charging the Debtor as well as the Debtor's wife Smith, his co-defendant in the Fraudulent Transfer Action, with seven counts including conspiracy to fraudulently transfer and conceal property in contemplation of a bankruptcy proceeding under Title 11.   Ultimately, the Debtor was adjudicated guilty of that charge and sentenced to 6 months of imprisonment, 3 years of supervised release, a $25,000 fine, and a $100 special assessment on this indictment.   *See* Judgment in a Criminal Case entered February 24, 2017, a true and correct copy of which is attached hereto as **Exhibit C** and is incorporated herein.

### FIRST CLAIM FOR RELIEF
**(Willful and Malicious Injury)**
**11 U.S.C. § 523(a)(6)**

15.     Plaintiff realleges and incorporates by reference paragraphs 1 through 14, inclusive, of this Complaint.

16.     Plaintiff seeks to declare the Napa Judgment nondischargeable under 11 U.S.C. §523(a)(6).

17.     Plaintiff's Fraudulent Transfer Action alleged that the Debtor fraudulently transferred certain assets with the actual intent to hinder, delay and defraud Elie.

18.     In connection with the Fraudulent Transfer Action, the Napa Court in its Statement of Decision made express findings that the Debtor made actual fraudulent transfers as to each alleged fraudulent transfer claim.   *See* Exhibit B attached hereto at 6:25-7:16.

19.     In connection with the Fraudulent Transfer Action, the Napa Court in its Statement of Decision expressly found sufficient evidence had been presented at trial for a finding of constructive fraudulent transfer as to each fraudulent transfer claim.   *See* Exhibit B attached hereto at 7:17-18.

20.    In connection with the Fraudulent Transfer Action, the Napa Court in its Statement of Decision expressly found sufficient evidence had been presented at trial for a finding that the Debtor has "repeatedly used numerous court processes to accomplish an improper purpose unconnected with the legitimate stated objection of the litigation." *See* Exhibit B attached hereto at 16:25-26.

21.    In connection with the Fraudulent Transfer Action, the Napa Court in its Statement of Decision expressly found sufficient evidence had been presented at trial for a finding that a civil conspiracy was shown between Cutuli, his entities and others. *See* Exhibit B attached hereto at 17:15-20.

22.    The Napa Court awarded compensatory damages against the Debtor based upon his fraudulent transfers and abuse of process. The court found the damages for abuse of process needed to make Elie whole were $2,041,610.56. *See* Exhibit B attached hereto at 20:7-11.

23.    The Napa Court in its Statement of Decision further found:

> [C]lear and convincing evidence of malice oppression and fraud warranting the imposition of punitive damages. . . . The court finds that the Abuse of Process, Fraudulent Transfer and Conspiracy claims were accompanied by actual malice on the part of the [Debtor]. The court finds clear and convincing evidence that [the Debtor] acted with intent to cause injury, that [his] conduct was despicable and was done with willful and knowing disregard of the rights of Elie. The court finds the defendants' conduct was despicable and subjected Elie to cruel and unjust hardship in knowing disregard of his rights. The court finds the conduct of [the Debtor] to be vile, base and contemptible such that it would normally be looked down upon and despised by reasonable people. The court further finds that [the Debtor] intentionally misrepresented or concealed a material fact and did so intending to harm plaintiff. The court finds the misconduct of [the Debtor] to have been part of a continuous pattern or practice and finds that [the Debtor] acted with trickery and deceit.

> *See* Exhibit B at 20:12-28.

24.     Based upon the findings in paragraph 23 above, the Napa Court awarded Elie $10,000,000 in punitive damages.

25.     Plaintiff is informed and believes and on that basis alleges that the Debtor's wrongful and fraudulent conduct alleged above, as further described in the Napa Judgment and the Statement of Decision, constitutes willful and malicious injury to Plaintiff.

26.     The Debtor has an established pattern of misconduct constituting willful and malicious injury to Plaintiff.   For example, despite being formally called to the stand for continued testimony before the Napa Court, the Debtor failed to report for trial in the Fraudulent Transfer Action. As a result, the Napa Court issued a bench warrant for the Debtor's arrest and reserved on the issue of contempt sanctions.  *See* Exhibit B attached hereto at 3:14-22.  Further, on April 8, 2016, the Debtor was adjudicated guilty of the crime of conspiracy to fraudulently transfer and conceal property in contemplation of a bankruptcy proceeding under Title 11.  *See* Exhibit C.

27.     Because of the Debtor's willful and malicious conduct in fraudulently transferring, hiding and concealing property, Plaintiff has been damaged in an amount not less than $14,814.107.48.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against the Debtor, as set forth below.

1.     That the court determine that the debt arising from the Napa Judgment owed by defendant Debtor to Plaintiff in the amount not less than **$14,814,107.48,** is nondischargeable pursuant to 11 U.S.C. § 523(a)(6);

2.     For costs of suit incurred herein; and

7

3.     For such other and further relief as the court deems just and proper.

Dated:  September 15, 2017          BERGER SINGERMAN LLP
                                    *Attorneys for Mehrdad Elie*
                                    One Town Center Road, Ste. 301
                                    Boca Raton, FL  33486
                                    Telephone: (561) 241-9500
                                    Facsimile: (561) 998-0028

                                    By:  */s/ Paul A. Avron*
                                          Paul A. Avron
                                          Florida Bar No. 0050814
                                          pavron@bergersingerman.com

                                    and

                                    Jeffrey E. Essner, Esq.
                                    California Bar No. 121438
                                    jessner@hopkinscarley.com
                                    Allonn E. Levy, Esq.
                                    California Bar No. 187251
                                    alevy@hopkinscarley.com
                                    Monique D. Jewett-Brewster, Esq.
                                    California Bar No. 217792
                                    mjb@hopkinscarley.com
                                    HOPKINS & CARLEY, A Law Corporation
                                    *Attorneys for Mehrdad Elie*
                                    70 S. First Street
                                    San Jose, California 95113
                                    Tel: (408) 286-9800
                                    Fax: (408) 938-6225
                                    *(Pro Hac Vice Applications Pending)*

# EXHIBIT A

ENDORSED

OCT 1 3 2011

Clerk of the Napa Superior Court
By: R Greenlee
Deputy

1   Jeffrey E. Essner (State Bar No. 121438)
    Allonn E. Levy (State Bar No. 187251)
2   Liam J. O'Connor (State Bar No. 246638)
    HOPKINS & CARLEY
3   A Law Corporation
    The Letitia Building
4   70 South First Street
    San Jose, CA 95113-2406
5
    *mailing address:*
6   P.O. Box 1469
    San Jose, CA 95109-1469
7   Telephone:    (408) 286-9800
    Facsimile:    (408) 998-4790
8
    Attorneys for Plaintiff, Cross-Defendant and
9   Intervenor MEHRDAD ELIE

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                          COUNTY OF NAPA

12   MEHRDAD ELIE,                          CASE NO.  26-53342
                                            (Consolidated with Case No. 26-50182)
13              Plaintiff,
                                            **[Proposed] JUDGMENT AFTER TRIAL**
14        v.                                **FOR EQUITABLE RELIEF, INJUNCTION,**
                                            **COMPENSATORY DAMAGES AND**
15   KATHLEEN A. SMITH, an individual; et   **PUNITIVE DAMAGES AGAINST**
     al.,                                   **CUTULI, SMITH, AND ENTITIES**
16
                Defendants.
17

18   AND RELATED CROSS-ACTION.
19

20   GREGORY CUTULI,

21              Plaintiff,

22        v.

23   KATHLEEN SMITH,

24              Defendant.

25   MEHRDAD ELIE

26              Intervenor

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

697\874206.13

JUDGMENT AFTER COURT TRIAL

1        This consolidated action came on for trial on September 26, 2011, in Department A of the

2    Superior Court of California, County of Napa, the Honorable Philip A. Champlin presiding.

3    Jeffrey E. Essner, Allonn E. Levy, and Liam J. O'Connor of Hopkins & Carley appeared as

4    attorneys for Plaintiff and Intervenor Mehrdad Elie ("Elie"). James R. Rose of the Law Offices

5    of James Rose appeared as attorney for defendant Gregory Cutuli ("Cutuli"). Other than Elie and

6    Cutuli, all other parties to these consolidated matters have defaulted, have been dismissed, or

7    were severed from the action as set forth herein.

8        Prior to the July 8, 2011 consolidation of the actions herein, with respect to Elie's Second

9    Amended Complaint in case number 26-53342 ("Fraudulent Transfer Complaint"), defendant

10   Kathleen Smith's default was entered on October 1, 2010. Likewise, the defaults of St. Helena

11   Castle Investments, LP and 5091 St. Helena Hwy, LLC were entered on July 30, 2010. The

12   default of Napa Smith Brewery & Winery, LLC was entered on November 30, 2010. Default

13   judgment has been entered against Albion Castle, LLC. Prior to the July 8, 2011 consolidation of

14   the actions herein, with respect to Elie's Complaint in Intervention in case number 26-50182

15   ("Complaint in Intervention"), Kathleen Smith's default was entered on April 16, 2010.

16       With the exception of an attempted appearance by Kathleen Smith in a single motion

17   during trial, which appearance was voluntarily withdrawn by Smith's counsel, no actions have

18   been taken by any of the defaulting defendants since their respective defaults were entered.

19   Specifically, no defaulting party has sought to set-aside any default entered.

20       Elie's claims against Jeromy Smith were severed from this action and stayed pursuant to

21   this court's July 8, 2011 Order. Elie's claims against Penelope Hefner and Grimm Investments,

22   LLC dba Bracknell Capital, LLC have been dismissed. Penelope Hefner's claims against Elie

23   have been dismissed. The Court entered a Stipulated Judgment of Permanent Injunction against

24   Pelican Brands, LLC and Napa Smith Holdings, LLC on September 26, 2011. Elie's remaining

25   claims against Pelican Brands, LLC and Napa Smith Holdings, LLC have been dismissed.

26       The Court has heard and considered all of the oral and documentary evidence admitted at

27   trial, the briefs and arguments of counsel, and the case was closed and submitted to the Court for

28   consideration and decision as of October 6, 2011.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

697\874206.13                                    - 2 -

JUDGMENT AFTER COURT TRIAL

### ELIE'S FRAUDULENT TRANSFER COMPLAINT

IT IS ORDERED, ADJUDGED, AND DECREED that:

1.    Judgment is hereby entered in favor of Elie and against defendants Smith, Cutuli, St. Helena Castle Investments, LP; 5091 St. Helena Hwy, LLC; and Napa Smith Brewery & Winery, LLC on the First Cause of Action of the Fraudulent Transfer Complaint (Alter Ego). The court finds that Cutuli and Smith are alter egos of each other, as well as each LLC and LP identified in this paragraph. Accordingly, Cutuli, Smith, and each LLC and LP are jointly and severally liable for all compensatory and punitive damages described in this Judgment.

2.    The court finds that defendants Smith, Cutuli, St. Helena Castle Investments, LP; 5091 St. Helena Hwy, LLC; and Napa Smith Brewery & Winery, LLC engaged in a civil conspiracy to carry out the fraudulent transfers described in paragraphs 1-30 herein. Accordingly, defendants Smith, Cutuli, St. Helena Castle Investments, LP; 5091 St. Helena Hwy, LLC; and Napa Smith Brewery & Winery, LLC are jointly and severally liable for all compensatory and punitive damages awarded to Elie as a result of these fraudulent transfers.

3.    Judgment is hereby entered in favor of Elie and against defendant Smith on the Second Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer of 1070 Orchard Avenue). The court finds that by completing the refinance of her residence at 1070 Orchard Avenue, Napa, California on or about October 9, 2009, Smith, as part of an ongoing conspiracy with Cutuli, effectively transferred $1,000,000 beyond the reach of her creditors, including Elie, and that Smith completed the transaction with the intent to hinder, delay, and defraud her creditors, including Elie. Smith is the person for whose benefit the transfer was made, and judgment for monetary damages as set forth in paragraph 21 herein is properly entered against Smith pursuant to Civil Code Section 3439.08(b)(1).

4.    Judgment is also entered in favor of Elie and against defendant Cutuli on the Second Cause of Action of the Fraudulent Transfer Complaint, as Amended on October 3, 2011 to conform to proof. The court finds that that there occurred a fraudulent transfer of over $2,000,000 in funds from Kathleen Smith to Greg Cutuli's accounts ending in account numbers 455 and 831 at the Napa Community Bank (subsequently known as Rabobank) as presented at

1  trial. The court further finds that Cutuli conspired with Smith to transfer funds utilizing the

2  services of attorney Michael Rupprecht and accounts at banking institutions including "Northern

3  Trust," "Bank of America," "First State Bank of the Florida Keys," and "T.I.B." with the intent to

4  hinder, delay, and defraud creditors, including Elie. Cutuli is the person for whose benefit the

5  transfers were made, and judgment for monetary damages as set forth in paragraph 21 herein is

6  properly entered against Cutuli pursuant to Civil Code Section 3439.08(b)(1).

7    5.    The Third Cause of Action of the Fraudulent Transfer Complaint (fraudulent

8  transfer of 1080 Orchard Avenue against Smith and Penelope Hefner) has been dismissed as

9  against Penelope Hefner, and became moot with respect to Kathleen Smith upon the December

10  15, 2010 sheriff's sale of 1080 Orchard Avenue.

11    6.    The Fourth Cause of Action of the Fraudulent Transfer Complaint (fraudulent

12  transfer of 1061 Orchard Avenue against Smith and Jeromy Smith) was severed from this action

13  by the court's July 8, 2011 order.

14    7.    Judgment is hereby entered in favor of Elie and against defendant Cutuli on the

15  Fifth Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer of the Porsche).

16  The court finds that Smith transferred the Porsche, valued at $100,000, to Cutuli for no

17  consideration and with the intent to hinder, delay, and defraud her creditors, including Elie. The

18  court finds that Cutuli received the Porsche with actual knowledge and intent to assist Smith in

19  defrauding her creditors, including Elie. As such, Cutuli is not a good faith transferee under Civil

20  Code Section 3439.08(a). Cutuli is the person for whose benefit the transfer was made, and

21  judgment for monetary damages as set forth in paragraph 21 herein is properly entered against

22  Cutuli pursuant to Civil Code Section 3439.08(b)(1).

23    8.    Judgment is hereby entered in favor of Elie and against defendant Cutuli on the

24  Sixth Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer of the BMW

25  pursuant to Civil Code Section 3439 *et seq.*). The court finds that Smith transferred the BMW,

26  valued at $143,530 to Cutuli for no consideration and with the intent to hinder, delay, and defraud

27  her creditors, including Elie. The court finds that Cutuli received the BMW with actual

28  knowledge and intent to assist Smith in defrauding her creditors, including Elie. As such, Cutuli

1    is not a good faith transferee under Civil Code Section 3439.08(a). Cutuli is the person for whose

2    benefit the transfer was made, and judgment for monetary damages as set forth in paragraph 21

3    herein is properly entered against Cutuli pursuant to Civil Code Section 3439.08(b)(1).

4            9.      Judgment is hereby entered in favor of Elie and against defendant Cutuli on the

5    Seventh Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer of the Tesla

6    pursuant to Civil Code Section 3439 *et seq.*). The court finds that Smith transferred the 2008

7    Tesla, valued at $100,000 to Cutuli for no consideration and with the intent to hinder, delay, and

8    defraud her creditors, including Elie. The court finds that Cutuli received the Tesla with actual

9    knowledge and intent to assist Smith in defrauding her creditors, including Elie. As such, Cutuli

10    is not a good faith transferee under Civil Code Section 3439.08(a). Cutuli is the person for whose

11    benefit the transfer was made, and judgment for monetary damages as set forth in paragraph 21

12    herein is properly entered against Cutuli pursuant to Civil Code Section 3439.08(b)(1).

13            10.     Judgment is hereby entered in favor of Elie and against defendants Cutuli and

14    Smith on the Eighth Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer of

15    Smith's ownership interest in 1 Executive Way, LLC). The court finds that through the June 21,

16    2008 Addendum to the April 25, 2008 Premarital Agreement between Cutuli and Smith, Smith

17    attempted to transfer a 50% interest in 1 Executive Way, LLC to Cutuli and Smith's community

18    property. The court finds the purported transfer to be ineffective because the Addendum

19    contemplates a future transfer, and does not contain the requisite express declaration of a present

20    transmutation. (See *In re Marriage of Lund* (2009) 174 Cal.App.4th 40, 50 (citing Cal. Fam.

21    Code § 852)). Alternatively, any transmutation that would have been completed through the June

22    21, 2008 Addendum to the April 25, 2008 Premarital Agreement was fraudulent and made for no

23    consideration and with the intent to hinder, delay, and defraud her creditors, including Elie. As

24    such, court finds that the transfer is fraudulent under Civil Code Section 3439.04. The court finds

25    that to the extent a transfer was accomplished, Cutuli received the 50% ownership interest in 1

26    Executive Way, LLC with actual knowledge and intent to assist Smith in defrauding her creditors,

27    including Elie. As such, Cutuli is not a good faith transferee under Civil Code Section

28    3439.08(a). Accordingly, Smith's attempted transfer of the 50% ownership interest in 1

697\874206.13            - 5 -

JUDGMENT AFTER COURT TRIAL

1  Executive Way, LLC is null and void pursuant to Civil Code Section 3439.07(a)(1), and the court

2  finds that Smith owns 99% of 1 Executive Way, LLC.  The Court finds that the remaining 1%

3  ownership interest in 1 Executive Way, LLC was previously transferred to Penelope Hefner, who

4  transferred the entirety of her interest in the LLC to Elie under the September 7, 2011 Settlement

5  Agreement between Elie and Hefner.  As such Smith is the true owner of 100% of 1 Executive

6  Way, LLC.

7        a.      The court hereby issues a mandatory injunction requiring all parties and their

8  agents, attorneys, officers, directors, members, servants, employees, and representatives, and all

9  persons acting in concert or participating with them to transfer all proceeds due from the

10  liquidation of 1 Executive Way, LLC to Elie or to an agent Elie shall designate (by advising the

11  payors of any such appointed designee).

12        b.      The court further imposes a constructive  trust on all proceeds due from the

13  liquidation of 1 Executive Way, LLC for the benefit of Elie or to an agent Elie shall designate (by

14  advising the payors of any such appointed designee).

15        11.      The Ninth Cause of Action of the Fraudulent Transfer Complaint (fraudulent

16  transfer of 1 Executive Way against Smith and 1 Executive Way, LLC) was severed from this

17  action by the court's July 8, 2011 order.

18        12.      Judgment is hereby entered in favor of Elie and against defendants Cutuli and

19  Smith on the Tenth Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer of

20  Smith's ownership interest in Albion Castle, LLC pursuant to Civil Code Section 3439 *et seq.*).

21  The court finds that through the June 21, 2008 Addendum to the April 25, 2008 Premarital

22  Agreement between Cutuli and Smith, Smith attempted to transfer a 50% interest in Albion

23  Castle, LLC to Cutuli and Smith's community property.  The court finds the purported transfer to

24  be ineffective because the Addendum contemplates a future transfer, and does not contain the

25  requisite express declaration of a present transmutation.   (See *In re Marriage of Lund* (2009)

26  174 Cal.App.4th 40, 50 (citing Cal. Fam. Code § 852)).  Alternatively, any transmutation that

27  would have been completed through the June 21, 2008 Addendum to the April 25, 2008

28  Premarital Agreement was fraudulent and made for no consideration and with the intent to hinder,

1  delay, and defraud her creditors, including Elie. As such, court finds that the transfer is

2  fraudulent under Civil Code Section 3439.04. The court finds that to the extent Cutuli received a

3  50% ownership interest in Albion Castle, LLC he did so with actual knowledge and intent to

4  assist Smith in defrauding her creditors, including Elie. As such, Cutuli is not a good faith

5  transferee under Civil Code Section 3439.08(a). Accordingly, Smith's attempted transfer of the

6  50% ownership interest in Albion Castle, LLC is null and void pursuant to Civil Code Section

7  3439.07(a)(1), and the court finds that Smith owns 100% of Albion Castle, LLC.

8        13.    The Eleventh Cause of Action of the Fraudulent Transfer Complaint (fraudulent

9  transfer of 881 Innes Avenue against Smith and Albion Castle, LLC) has already been

10 adjudicated, and default judgment was entered against Albion Castle, LLC on this claim.

11       14.    Judgment is hereby entered in favor of Elie and against defendants Cutuli and

12 Smith on the Twelfth Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer

13 of Smith's ownership interest in St. Helena Castle Investments, LP). The court finds that through

14 the June 21, 2008 Addendum to the April 25, 2008 Premarital Agreement between Cutuli and

15 Smith, Smith attempted to transfer a 50% interest in St. Helena Castle Investments, LP to Cutuli

16 and Smith's community property. The court finds the purported transfer to be ineffective because

17 the Addendum contemplates a future transfer, and does not contain the requisite express

18 declaration of a present transmutation.   (See *In re Marriage of Lund* (2009) 174 Cal.App.4th 40,

19 50 (citing Cal. Fam. Code § 852)). Alternatively, any transmutation that would have been

20 completed through the June 21, 2008 Addendum to the April 25, 2008 Premarital Agreement was

21 fraudulent and made for no consideration and with the intent to hinder, delay, and defraud her

22 creditors, including Elie. As such, court finds that the transfer is fraudulent under Civil Code

23 Section 3439.04. The court finds that to the extent Cutuli received the 50% ownership interest in

24 St. Helena Castle Investments, LP he did so with actual knowledge and intent to assist Smith in

25 defrauding her creditors, including Elie. As such, Cutuli is not a good faith transferee under Civil

26 Code Section 3439.08(a). Accordingly, Smith's attempted transfer of the 50% ownership interest

27 in St. Helena Castle Investments, LP is null and void pursuant to Civil Code Section

28 3439.07(a)(1), and the court finds that Smith owns 100% of St. Helena Castle Investments, LP.

15.    The Thirteenth Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer of 2955 Saint Helena Hwy against Smith and St. Helena Castle Investments, LP) became moot when Liberty Bank foreclosed on the real property on September 24, 2010.

16.    Judgment is hereby entered in favor of Elie and against defendants Cutuli and Smith on the Fourteenth Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer of Smith's ownership interest in 5091 St. Helena Hwy, LLC).  The court finds that through the June 21, 2008 Addendum to the April 25, 2008 Premarital Agreement between Cutuli and Smith, Smith attempted to transfer a 50% interest in 5091 St. Helena Hwy, LLC to Cutuli and Smith's community property.  The court finds the purported transfer to be ineffective because the Addendum contemplates a future transfer, and does not contain the requisite express declaration of a present transmutation.    (See *In re Marriage of Lund* (2009) 174 Cal.App.4th 40, 50 (citing Cal. Fam. Code § 852)).  Alternatively, any transmutation that would have been completed through the June 21, 2008 Addendum to the April 25, 2008 Premarital Agreement was fraudulent and made for no consideration and with the intent to hinder, delay, and defraud her creditors, including Elie.  As such, court finds that the transfer is fraudulent under Civil Code Section 3439.04.  The court finds that to the extent Cutuli received the 50% ownership interest in 5091 St. Helena Hwy, LLC he did so with actual knowledge and intent to assist Smith in defrauding her creditors, including Elie.  As such, Cutuli is not a good faith transferee under Civil Code Section 3439.08(a).  Accordingly, Smith's attempted transfer of the 50% ownership interest in 5091 St. Helena Hwy, LLC is null and void pursuant to Civil Code Section 3439.07(a)(1), and the court finds that Smith owns 100% of 5091 St. Helena Hwy, LLC.

17.    The Fifteenth Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer of 5091 Solano Avenue against Smith and 5091 St. Helena Hwy, LLC) became moot when Liberty Bank foreclosed on the real property on September 24, 2010.

18.    Judgment is hereby entered in favor of Elie and against defendants Cutuli and Smith on the Sixteenth Cause of Action of the Fraudulent Transfer Complaint (fraudulent transfer of Smith's ownership interest in Napa Smith Brewery & Winery, LLC) as set forth below:

a.    The court finds that through the April 25, 2008 Premarital Agreement

between Cutuli and Smith, Smith attempted to transfer a 50% interest in Napa Smith Brewery & Winery, LLC ("NSBW") to Cutuli and Smith's community property. The court finds the purported transfer to be ineffective because the Addendum contemplates a future transfer, and does not contain the requisite express declaration of a present transmutation. (See *In re Marriage of Lund* (2009) 174 Cal.App.4th 40, 50 (citing Cal. Fam. Code § 852)). Alternatively, any transmutation that would have been completed through the April 25, 2008 Premarital Agreement was fraudulent and made for no consideration and with the intent to hinder, delay, and defraud her creditors, including Elie. As such, court finds that the transfer is fraudulent under Civil Code Section 3439.04. The court finds that to the extent Cutuli received the 50% ownership interest in NSBW, he did so with actual knowledge and intent to assist Smith in defrauding her creditors, including Elie. As such, Cutuli is not a good faith transferee under Civil Code Section 3439.08(a). Accordingly, Smith's attempted transfer of the 50% ownership interest in NSBW is null and void pursuant to Civil Code Section 3439.07(a)(1), and the court finds that Smith owns 100% of NSBW.

   b.    As such, any funds due NSBW pursuant to the December 2, 2010 Asset Purchase Agreement with Napa Smith Holdings, LLC are hereby attached for Elie's benefit pursuant to Civ. Code § 3439.07(a)(2), and such funds shall be transferred to Receiver Susan Uecker in accordance with the December 15, 2009 Charging Order against Smith's interest in NSBW and the August 26, 2011 Charging Order against Cutuli's interest in NSBW.

   c.    The court also finds that Cutuli and Smith's execution of their respective December 16, 2010 Restrictive Covenant and Brand Sale Bonus Agreements with Napa Smith Holdings, LLC, through which funds would flow directly to Cutuli and Smith pursuant to the sale of NSBW's assets, constituted fraudulent transfers. In addition, the court finds that Cutuli's execution of the December 16, 2010 Consulting Agreement with Napa Smith Holdings, LLC constituted a fraudulent transfer. Specifically, Cutuli and Smith structured the sale of NSBW's assets, and the foregoing agreements, to divert

1    proceeds due NSBW to Cutuli and Smith, in order to evade Elie's judgment and charging

2    orders against NSBW.  These actions were taken by Cutuli and Smith with the intent to

3    hinder, delay, and defraud her creditors, including Elie and Cutuli and Smith were not

4    good faith transferees  pursuant to Civil Code Section 3439.08(a).

5         d.    Accordingly, the court hereby orders that all funds due Cutuli and Smith

6    under the Restrictive Covenant, Brand Sale Bonus Agreements and the Consulting

7    Agreement are hereby attached for Elie's benefit pursuant to Civ. Code § 3439.07(a)(2),

8    and are deemed to be held in constructive trust for the benefit of Elie.  The court hereby

9    enjoins all parties and their agents, attorneys, officers, directors, members, servants,

10   employees, and representatives, and all persons acting in concert or participating with

11   them from transferring any proceeds due under the Restrictive Covenant and Brand Sale

12   Bonus Agreements and Consulting Agreement to Smith, Cutuli, NSBW, or any person or

13   entity other than Elie.  The court hereby issues a mandatory injunction requiring all parties

14   and their agents, attorneys, officers, directors, members, servants, employees, and

15   representatives, and all persons acting in concert or participating with them to transfer all

16   proceeds due under the Asset Purchase Agreement, Restrictive Covenant and Brand Sale

17   Bonus Agreements and Consulting Agreement to Elie or to an agent Elie shall designate

18   (by advising the payors of any such appointed designee).

19        19.    Judgment is hereby entered in favor of Elie and against defendants Smith, Cutuli,

20   St. Helena Castle Investments, LP; 5091 St. Helena Hwy, LLC; and Napa Smith Brewery &

21   Winery, LLC on the Seventeenth Cause of Action of the Fraudulent Transfer Complaint, as

22   Amended on October 3, 2011 to conform to proof (conspiracy against all defendants).  The court

23   finds that defendants Smith, Cutuli, St. Helena Castle Investments, LP; 5091 St. Helena Hwy,

24   LLC; and Napa Smith Brewery & Winery, LLC engaged in a civil conspiracy to carry out the

25   fraudulent transfers and abuse of process and each claim described herein.  Accordingly,

26   defendants Smith, Cutuli, St. Helena Castle Investments, LP; 5091 St. Helena Hwy, LLC; and

27   Napa Smith Brewery & Winery, LLC are jointly and severally liable for all compensatory

28   damages awarded to Elie as a result of the fraudulent transfers and abuse of process described

1  herein, and defendants Smith, Cutuli, St. Helena Castle Investments, LP; 5091 St. Helena Hwy,

2  LLC; and Napa Smith Brewery & Winery, LLC are jointly and severally liable for all punitive

3  damages awarded to Elie as described in Paragraph 34 herein.

4       20.    Judgment is hereby entered in favor of Elie and against defendants Cutuli and

5  Smith on the Eighteenth Cause of Action of the Fraudulent Transfer Complaint, as Amended on

6  October 3, 2011 to conform to proof (constructive trust).  The court hereby orders that any

7  consideration owed, due, or received by Cutuli, Smith, or NSBW under the Asset Purchase

8  Agreement and Restrictive Covenant and Brand Sale Bonus Agreements between NSBW, Cutuli

9  and Smith, on the one hand, and Napa Smith Holdings, LLC on the other hand; as well as funds

10  owed, due, or received by Cutuli and Smith under the Consulting Agreement between Cutuli and

11  Napa Smith Holdings, LLC are held in constructive trust for Elie's benefit.  The court hereby

12  issues a mandatory injunction requiring Cutuli and Smith and their agents, attorneys, officers,

13  directors, members, servants, employees, and representatives, and all persons acting in concert or

14  participating with them to transfer all funds received by Cutuli and Smith under the Asset

15  Purchase Agreement, Restrictive Covenant and Brand Sale Bonus Agreements, and Consulting

16  Agreements to Elie or to an agent Elie shall designate.   In addition, any money, property or assets

17  owed, due, or received by defendants Smith, Cutuli, St. Helena Castle Investments, LP; 5091 St.

18  Helena Hwy, LLC; and Napa Smith Brewery & Winery, LLC through the fraudulent transfers

19  and abuse of process described herein are held in constructive trust for Elie's benefit.

20       21.    The court hereby issues an award of compensatory damages in the amount of

21  $2,772,496.92 in favor of Elie and against defendants Smith, Cutuli, St. Helena Castle

22  Investments, LP; 5091 St. Helena Hwy, LLC; and Napa Smith Brewery & Winery, LLC.  The

23  $2,772,496.92 in compensatory damages is based upon the value of the assets fraudulently

24  transferred as set forth herein, capped by the amount of Elie's outstanding judgment against

25  Smith in San Mateo Superior Court action CIV471364 as of October 12, 2011.

26                **ELIE'S COMPLAINT IN INTERVENTION**

27      IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that:

28       22.    Judgment is hereby entered in favor of Elie and against defendant Cutuli on the

1   First Cause of Action of Elie's Complaint in Intervention, as Amended on October 3, 2011 to

2   conform to proof (fraudulent transfer against Cutuli and Smith).  The court finds that Cutuli and

3   Smith agreed to allow Cutuli to file Cutuli's October 26, 2009 Complaint against Smith in case

4   number 26-50182 and the October 5, 2010 Amended Complaint (collectively, the "Cutuli-Smith

5   complaint") and agreed to allow Cutuli to record a lis pendens on the real property located at

6   1070 Orchard Avenue in order to hinder, delay, and defraud creditors including Elie.  Cutuli's

7   claims asserted in the Cutuli-Smith Complaint were meritless, and the lis pendens and judgment

8   asserted were fraudulent. The purported obligation of Smith to transfer an interest in the 1070

9   Orchard property to Cutuli, which forms the basis for Cutuli's complaint, as well as the resulting

10   judgment are null and void as fraudulent transfers.

11          23.      Judgment is hereby entered in favor of Elie and against defendant Cutuli on the

12   Second Cause of Action of Elie's Complaint in Intervention (abuse of process against Cutuli and

13   Smith).  The court finds that Cutuli and Smith are liable for abuse of process as a result of their

14   use of court processes for an improper purpose.  The court finds that Elie was actually harmed

15   and that such harm is compensable in the form of damages in the amount of $2,041,610.56, as set

16   forth in Paragraph 27 herein.  These damages encompass the damages suffered by Elie with

17   respect to the abuse of process claims in the Complaint in Intervention as well as the December 7

18   Amendment.

19          24.      Judgment is hereby entered in favor of Elie and against defendant Cutuli on the

20   Third Cause of Action of Elie's Complaint in Intervention, as Amended on October 3, 2011 to

21   conform to proof (conspiracy liability against all parties).  The court finds that Cutuli and Smith

22   engaged in a civil conspiracy to carry out the fraudulent transfers and abuse of process and each

23   claim described herein.  Accordingly, Cutuli and Smith are jointly and severally liable for all

24   compensatory awarded to Elie as a result of the fraudulent transfers and abuse of process

25   described herein, and Cutuli and Smith are jointly and severally liable for all punitive damages

26   awarded to Elie as described in Paragraph 34 herein.

27          25.      The Fourth Cause of Action of Elie's Complaint in Intervention (quiet title as to

28   1070 Orchard Avenue) became moot upon Grimm Investments, LLC dba Bracknell Capital,

1  LLC's foreclosure and sale of 1070 Orchard Avenue.  Claims against Bracknell have been

2  previously dismissed.

3        26.    Judgment is hereby entered in favor of Elie and against defendant Cutuli on the

4  Fifth Cause of Action of Elie's Complaint in Intervention, as Amended on October 3, 2011 to

5  conform to proof (Declaratory Relief).  The court hereby declares the following:

- All funds flowing from the transaction with Pelican Brands LLC and Napa Smith Holdings, LLC as well as all funds flowing from the sale of 1 Executive Way are available to satisfy Elie's judgment;

- The premarital agreement and addendum thereto did not effect any transfer of assets to Cutuli and as an alternative declaration, any such transfer has been set aside;

- The vehicle transfers were fraudulent;

- Cutuli facilitated and assisted Smith in completing the 1070 Orchard Avenue refinance, which effectuated a fraudulent transfer of assets away from the reach of creditors;

- Cutuli's claims asserted in the Cutuli-Smith Complaint were meritless, and the *lis pendens* and judgment asserted were fraudulent.

17        27.    Judgment is hereby entered in favor of Elie and against defendants Cutuli and

18  Smith on the Second Cause of Action of the Complaint in Intervention (abuse of process against

19  Cutuli and Smith).  The court calculates the award of damages for this claim as well as that set

20  forth in paragraph 23, as follows:

21        a.    The court finds that Cutuli and Smith are liable for abuse of process as a

22  result of their use of court processes for an improper purpose.  Specifically, the court finds

23  that Cutuli and Smith cooperated to allow Cutuli to file a complaint against Smith and to

24  enter default judgment against Smith for the purpose of fraudulently transferring Smith's

25  assets to Cutuli under the guise of enforcement of Cutuli's judgment.

26        b.    Damages in the amount of $1,814,578.60 are awarded to Elie and against

27  Cutuli and Smith, representing out-of-pocket expenses incurred by Elie as a result of the

28  abuse of process.

1        c.     In addition, Cutuli and Smith's abuse of court processes interfered with and

2  delayed Elie's levy and sale of 1070 Orchard Avenue, causing Elie to suffer the loss of

3  use of the funds that could be realized from sale. The court compensates for that harm by

4  awarding further damages in the amount of $227,031.96 against Cutuli and Smith and in

5  favor of Elie. This number represents accrued interest at the legal rate of 10% in the 220

6  days between the October 26, 2009 filing of Cutuli's complaint and *lis pendens* and the

7  June 3, 2010 order granting Elie's motion to expunge the *lis pendens*. The interest figure

8  is calculated based upon the $3,766,666.66 average value of 1070 Orchard Avenue, which

9  was deduced by the court after considering evidence of 3 separate valuations of the 1070

10  Orchard property at trial, encompassed by plaintiff's trial exhibits 10, 21, and 80.

11        d.     Total compensatory damages awarded for the harm caused to Elie by the

12  abuse of process claims amount to $2,041,610.56.

13  **ELIE'S DECEMBER 7, 2010 AMENDMENT TO COMPLAINT IN INTERVENTION**

14       IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that:

15       28.     Judgment is hereby entered in favor of Elie and against defendants Cutuli and

16  Smith on the First Cause of Action (to establish Cutuli's $10,000,000 default judgment against

17  Smith as a fraudulent transfer) of the December 7, 2010 Amendment to the Complaint in

18  Intervention (originally filed as a separate complaint under case number 28-54920 but later

19  deemed an amendment to Elie's Complaint in Intervention in case number 26-50182 ("December

20  7, 2010 Amendment"). The court finds that Cutuli and Smith cooperated to allow Cutuli to enter

21  default judgment against Smith for the purpose of fraudulently transferring Smith's assets to

22  Cutuli under the guise of enforcement of Cutuli's judgment, and the court finds that the parties

23  conduct constituted extrinsic fraud. Cutuli's November 17, 2010 judgment against Smith in the

24  amount of $10,000,000 is hereby set aside and rendered null and void.

25       29.     Judgment is hereby entered in favor of Elie and against defendants Cutuli and

26  Smith on the Second Cause of Action of the December 7, 2010 Amendment (abuse of process

27  against Cutuli and Smith). The court finds that Cutuli and Smith are liable for abuse of process as

28  a result of their use of court processes for an improper purpose. The amount of the compensatory

1  damages for $2,041,610.56, as set forth in Paragraph 27 herein, encompass the damages suffered

2  by Elie with respect to the abuse of process claims in the Complaint in Intervention as well as the

3  December 7 Amendment.

4         30.    Judgment is hereby entered in favor of Elie and against defendants Cutuli and

5  Smith on the Third Cause of Action of the December 7, 2010 Amendment (conspiracy).  The

6  court finds that Cutuli and Smith engaged in a civil conspiracy to carry out the fraudulent

7  transfers and abuse of process and each claim described in paragraphs 1-29 herein.  Accordingly,

8  Cutuli and Smith are jointly and severally liable for all compensatory and punitive damages

9  awarded to Elie as a result of the fraudulent transfers and abuse of process described in

10  Paragraphs 1-29 herein.

11        31.    Judgment is hereby entered in favor of Elie and against defendant Cutuli on the

12  Fourth Cause of Action of the December 7, 2010 Amendment, as Amended on October 3, 2011 to

13  conform to proof (constructive trust).  The court hereby imposes a constructive trust, for the

14  benefit of Elie, over any assets collected by Cutuli pursuant to his judgment against Smith thus

15  far.  Susan Uecker of Uecker & Associates is hereby appointed as receiver to take control of any

16  and all assets collected by Cutuli pursuant to his judgment thus far, and Ms. Uecker is ordered to

17  dispose of those assets in accordance with the constructive trust imposed herein.

18        32.    Judgment is hereby entered in favor of Elie and against defendant Cutuli on the

19  Fifth Cause of Action of the December 7, 2010 Amendment, as Amended on October 3, 2011 to

20  conform to proof (injunctive relief), as follows:

21             a.    Cutuli and his agents, attorneys, officers, directors, members, servants,

22        employees, and representatives, and all persons acting in concert or participating with

23        Cutuli are permanently enjoined from enforcing Cutuli's judgment against Smith.

24             b.    The court hereby enjoins Cutuli, his agents, attorneys, officers, directors,

25        members, servants, employees, and representatives, and all persons acting in concert or

26        participating with Cutuli, including but not limited to all entities identified in the

27        complaints in this action and those identified at trial as the "Right Angle Charter,"

28        "Northern Trust," "Bank of America," "T.I.B.", "First State Bank of the Florida Keys,"

1   the "Rupprecht Law Firm" or attorney Michael Rupprecht from transferring, disposing of,

2   hiding, withdrawing, expending, using, or in any way impairing, assets held in any

3   financial account, trust account, bank account, investment account, or similar account

4   controlled by Greg Cutuli (accounts "controlled" by Cutuli include but are not limited to

5   accounts where Cutuli is a signatory or has authority to withdrawal funds) except for

6   purposes of directing said funds to a court-ordered receiver until such time as all

7   judgments of Mehrdad Elie against Cutuli and Smith have been satisfied.  All such

8   accounts shall be "frozen" pending satisfaction of this judgment or further order of the

9   court.

10          c.       The court hereby enjoins Smith, her agents, attorneys, officers, directors,

11  members, servants, employees, and representatives, and all persons acting in concert or

12  participating with Smith, including but not limited to all entities identified in the

13  complaints in this action and those identified at trial as the "Right Angle Charter,"

14  "Northern Trust," "Bank of America," "T.I.B.", "First State Bank of the Florida Keys,"

15  the "Rupprecht Law Firm" or attorney Michael Rupprecht from transferring, disposing of,

16  hiding, withdrawing, expending, using, or in any way impairing, assets held in any

17  financial account, trust account, bank account, investment account, or similar account

18  controlled by Smith (accounts "controlled" by Smith include but are not limited to

19  accounts where Smith is a signatory or has authority to withdrawal funds) except for

20  purposes of directing said funds to a court-ordered receiver until such time as all

21  judgments of Mehrdad Elie against Cutuli and Smith have been satisfied.  All such

22  accounts shall be "frozen" pending satisfaction of this judgment or until further order of

23  the court.

24  33.     As set forth in Paragraphs 21 and 27 herein, the court issues a compensatory

25  damages award in a total sum of $4,814,107.48, which represents compensatory damages in favor

26  of Elie and against Cutuli and Smith on all claims for which money damages were obtained.  In

27  addition, the court finds that there is clear and convincing evidence establishing that defendants

28  Smith, Cutuli, St. Helena Castle Investments, LP; 5091 St. Helena Hwy, LLC; and Napa Smith

1  Brewery & Winery, LLC engaged in the conspiracy, fraudulent transfers and abuse of process

2  described herein with fraud, oppression, and malice, warranting the imposition of punitive

3  damages.  The court finds clear and convincing evidence that defendants acted with subjective

4  intent to cause injury, that their conduct was despicable and was done with willful and knowing

5  disregard of the rights of Elie.  (See, e.g., *Carrillo v. Su ( In re Su)*, 290 F.3d 1140 (2002)).  The

6  court finds the defendants' conduct was despicable and subjected Elie to cruel and unjust

7  hardship in knowing disregard of his rights.  The court finds the conduct of each defendant to be

8  vile, base and contemptible such that it would normally be looked down upon and despised by

9  reasonable people.  The court further finds that defendants and each of them intentionally

10  misrepresented or concealed a material fact and did so intending to harm plaintiff.  The court

11  finds the misconduct of defendants to have been part of a continuous pattern or practice and finds

12  that each defendant acted with trickery and deceit.

13  　　　34.　　For the sake of example and by way of punishment, the court hereby issues a

14  punitive damages award in favor of Elie and against defendants Cutuli and Smith in the amount

   of $ 10,000,000.00

15  ~~of three times the compensatory damages, for a total punitive damages award of $14,442,322.44~~.

16  　　　35.　　Accordingly, the court hereby enters judgment in favor of Elie and against

   $14,814,107.48

17  defendants Cutuli and Smith in the aggregate amount of $~~19,256,429.92~~, which represents the

18  sum of the compensatory damages and punitive damages herein.

19  　　　36.　　As a result of the court's findings of alter-ego and conspiracy liability herein,

20  defendants Smith, Cutuli, St. Helena Castle Investments, LP; 5091 St. Helena Hwy, LLC; and

21  Napa Smith Brewery & Winery, LLC are jointly and severally liable for the judgment in the

22  amount of $~~19,256,429.92~~ and are each bound by the equitable and injunctive relief granted

   $14,814,107.48

23  herein.

24  // A.  The court expressly finds that attorney James

25  // Rose and his firm engaged in no misconduct. The finding

26  // of abuse of process relates to Mr. Cutuli and his co-conspirators.

   // There is no evidence that Mr. Rose was a participant in such

27  // a conspiracy. It appears to the court that Mr. Rose

28  // acted ethically with respect to his duties as counsel in

   // each of these consolidated actions.

1    37.    For the foregoing reasons, the court finds that Elie is, in all respects, the prevailing

2    party in this action.

3

4    IT IS SO ORDERED, ADJUDGED, AND DECREED.

5

6    Dated: ___10 / 13___ , 2011          By: _Philip A. Champlin_____

7                                              Honorable Philip A. Champlin
                                               Judge of the Superior Court

8

9    **APPROVED AS TO FORM:**

10

11   Dated: _____, 2011          By:_____

12                                              James R. Rose
                                               THE LAW OFFICES OF JAMES R. ROSE
13                                             Attorneys for Defendant GREGORY CUTULI

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1    Jeffrey E. Essner (State Bar No. 121438)
     Allonn E. Levy (State Bar No. 187251)
2    Liam J. O'Connor (State Bar No. 246638)
     HOPKINS & CARLEY
3    A Law Corporation
     The Letitia Building
4    70 S First Street
     San Jose, CA 95113-2406
5

6    *mailing address:*
     P.O. Box 1469
7    San Jose, CA 95109-1469
     Telephone:    (408) 286-9800
8    Facsimile:    (408) 998-4790

9    Attorneys for Plaintiff/Intervenor
     Mehrdad Elie
10

**ENDORSED**

OCT 1 3 2011

Clerk of the Napa Superior Court
By: K Greenlee
                    Deputy

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                            COUNTY OF NAPA

13    MEHRDAD ELIE,                          CASE NO.  26-53342
                                             [Consolidated with 26-50182]
14                    Plaintiff,
                                             **STATEMENT OF DECISION AFTER**
15          v.                               **COURT TRIAL**

16    KATHLEEN A. SMITH, an individual;      **[Code Civ. Proc. §632; Cal. Rule Ct. 3.1591]**
      et al.,
17                                           Trial Date:    September 26, 2011
                      Defendants.            Time:          8:30 a.m.
18                                           Dept:          A
                                             Judge:         Hon. Philip A. Champlin
19

20    AND RELATED ACTIONS.

21    GREGORY CUTULI,

22                    Plaintiff,

23          v.

24    KATHLEEN A. SMITH, an individual,
      et  al.,
25
                      Defendants.
26

27    MEHRDAD ELIE,

28                    Intervenor.

HOPKINS & CARLEY
ATTORNEYS AT LAW
   SAN JOSE          357\879904.4

          STATEMENT OF DECISION AFTER COURT TRIAL

1    This matter came on for trial and assignment before Napa County Superior Court Judge

2    Francisca P. Tisher on September 8, 2011. The matter was assigned for trial on September 12,

3    2011 at which time defaulting party Kathleen Smith ("Smith") filed for bankruptcy in the Florida

4    Bankruptcy Court and defendant Gregory Cutuli ("Cutuli") asserted the automatic stay in the

5    instant case. On approximately September 15, 2011 the Federal Bankruptcy Court of Florida

6    ruled that the claims of Cutuli were not covered by the automatic stay and expressly granted relief

7    from stay to permit claims against both Smith and Cutuli to proceed through judgment. The

8    Honorable Francisca P. Tisher assigned the matter to this court for trial commencing September

9    26, 2011, the Honorable Philip A. Champlin, presiding.

I.

## SUMMARY OF PLEADINGS AND PROCEEDINGS

12    Of the numerous complaints and cross-complaints originally filed by various parties to

13    this consolidated action, the following claims remained active and were decided at the time of

14    trial.

### A.    Cutuli's October 25, 2009 Complaint Against Smith, as Amended October 5, 2010, Case No. 26-50182

17    Cutuli initiated the instant action on October 25, 2009 by filing a complaint against Smith.

18    Judgment Creditor Mehrdad Elie ("Elie") was not provided notice of the lawsuit but eventually

19    uncovered it and filed a separate complaint in intervention (hereafter the "Cutuli-Smith

20    Complaint"). Cutuli entered Default judgment against Smith on his amended complaint on

21    November 17, 2010; At trial, Elie attacked the default judgment on the basis of fraud.

### B.    Elie's Original January 26, 2010 Complaint in Intervention

23    Based on the original October 25, 2009 Cutuli-Smith Complaint against which sought to

24    quiet title in the 1070 Orchard property in favor of Cutuli, Elie filed a complaint in intervention

25    seeking to (1) Set Aside any Fraudulent Transfer involving the 1070 Orchard Avenue property[1],

26    (2) Recover damages for Abuse of Process, (3) Establish a Conspiracy to defraud, (4) Quiet

---

[1]   Elie sought to set aside Smith's purported obligation to Cutuli, which gave rise to Cutuli's claim and *lis pendens*.

1  Title[2], and (5) Obtain Declaratory Relief (hereafter the "Complaint in Intervention").

2        C.     **Elie's July 30, 2010 Second Amended Complaint, October 13, 2010 and**
3               **January 4, 2011 Amendments to the Same, Case No. 26-53342**

4        Originally captioned as a separate case, on July 30, 2010 Elie filed a complaint (which

5  was subsequently consolidated with the Smith-Cutuli Complaint action) for (1) Establishment of

6  Alter Ego, (2) Setting Aside Fraudulent Transfers relating to various vehicles purchased by

7  Smith, properties, and LLC interests, (3) Establishment of Conspiracy to Defraud, and (4)

8  Constructive Trust, claims for trial remain against Cutuli, and the LLC defendants (hereafter the

9  "Fraudulent Transfer Complaint").

10        D.     **Elie's December 7, 2010 Amendment to the Complaint in Intervention**

11        On or about December 7, 2010, Elie field another separate action, however, at the request

12  of Cutuli's counsel, Elie's separate December 7, 2010 complaint was treated as an amendment to

13  the original Complaint in Intervention in case number 26-50182.  This amendment sought to (1)

14  Setting Aside Cutuli's Judgment against Smith as a Fraudulent Transfer, (2) Damages for Abuse

15  of Process, (3) Establishment of a Conspiracy to Defraud, (4) Establishment of a Constructive

16  Trust, and (5) Injunctive Relief (separately referred to as the "December 7, 2010 Amendment"

17  but collectively referred to as part of the "Complaint in Intervention").

18        E.     **Elie's Amendments During Trial**

19        During the course of trial, based upon newly discovered evidence and good cause

20  appearing, the court granted an oral motion to amend to conform to proof and accepted Elie's

21  Amendment to Consolidated Second Amended Complaint and Complaint in Intervention on

22  October 3, 2011.  The October 3, 2011 amendment amended Elie's claims with respect to Greg

23  Cutuli to each of the fraudulent transfer, constructive trust, declaratory relief, injunctive relief,

24  and conspiracy claims, including causes of action two, 17, and 18 of the Fraudulent Transfer

25  Complaint (Case no. 26-53342), One, Three and Five of the Complaint in Intervention (Case No.

26  26-50182), and Four and Five of the December 07, 2010 Amendment.

27

28     [2]  The subject property, 1070 Orchard way was subsequently lost to a senior creditor by foreclosure.
      Therefore, this claim is likely moot.

## II.

## SUMMARY OF PROCEEDINGS AND RELATED FINDINGS

Trial commenced on September 26, 2011 before this Court with the consideration of motions *in limine*. All papers and argument in support of and in opposition to said motions were considered. This Court finds that those motions for which express rulings were not made on the record are deemed moot.

On September 26, 2011, Plaintiff and Intervenor Elie presented his opening statement, defendant Cutuli reserved. As the first witness, Elie called defendant Cutuli to the stand pursuant to Evidence Code Section 776. Cutuli had been properly served with a notice to appear and produce documents at trial.    On September 27, 2011, the court granted the unopposed request of Elie to interrupt Mr. Cutuli's testimony to take out-of-area witness Shane Campbell out-of-order. Thereafter, Mr. Cutuli's testimony continued. At the conclusion of the day, all parties and counsel were ordered back for the continued trial on October 3, 2011.

### A.    Cutuli's Failure To Report For Continued Trial Testimony; Issuance of the Bench Warrant.

On the morning of October 3, 2011, Mr. Cutuli failed to report for trial. When questioned, Mr. Cutuli's counsel informed the court that it was his understanding that Mr. Cutuli was refusing to return. Mr. Cutuli was formally called to the stand for continued testimony and did not appear. Elie's counsel requested the immediate issuance of a bench warrant and the imposition of contempt sanctions. The court took the matter under submission. During the afternoon session, having considered the matter the court issued a bench warrant for Mr. Cutuli's arrest and reserved on the issue of contempt sanctions.

### B.    Smith's Counsel's Motion Relating to Newly Discovered Documents.

On the morning of October 3, 2011, counsel for Ms. Smith and for attorney Michael Rupprecht, Ms. Erin Pallas-Gray, appeared seeking to bring a motion to exclude certain evidence from trial. Attorney Michael Rupprecht represents Smith in other matters, but had not previously entered an appearance on behalf of Smith in this action. The third-party papers submitted to the court stated a general appearance for Ms. Smith and a special appearance for Mr. Rupprecht.

1    Counsel for Elie offered to accept Smith's general appearance to argue the evidence issue,

2    however, Ms. Pallas-Gray then withdrew the appearance on behalf of Ms. Smith and changed the

3    moving papers to reflect solely a special appearance on behalf of attorney Michael Rupprecht.

4         Ms. Pallas-Gray sought to exclude evidence found in newly introduced Trial Exhibits

5    170-197 including Trial Exhibits 190 and 191 which Pallas-Gray contended had been

6    inadvertently disclosed. Elie's counsel advised the court that it intended to submit Trial Exhibits

7    190 and 191 for the court's review based on Mr. Rupprecht's claim of "inadvertent disclosure,"

8    which had been made on Friday September 30, 2011. Elie's counsel's contention was that the

9    documents were not privileged. The court received Elie's bench brief on the issue of inadvertent

10   disclosure and privilege and heard argument from all parties and specially appearing counsel

11   Pallas-Gray.

12        The court permitted Ms. Pallas-Gray to be heard on all issues. Following an extensive

13   hearing and having considered the written submissions and oral arguments submitted by all

14   parties the court overruled attorney Rupprecht's objection as to admissibility. With respect to the

15   claim of privilege, the court found that documents within Trial Exhibit 190 and 191 had been

16   redacted by Mr. Rupprecht prior to production, suggesting the documents were not inadvertently

17   disclosed, and that many of the documents were generated by or provided to third-parties

18   (including admitted non-client Greg Cutuli). The court further found that a sufficient showing

19   had been made at trial that the services of Mr. Rupprecht had been "sought or obtained to enable

20   or aid [one or more individuals] to commit or plan to commit a crime or fraud." (Cal. Evid. Code

21   §956). Specifically, the court found that based upon Mr. Cutuli's testimony to date, documentary

22   evidence of substantial transfers of funds to and from Mr. Rupprecht, evidence of Cutuli's

23   ongoing discussions with Mr. Rupprecht (during a time that Rupprecht represented Smith and

24   Cutuli had pending lawsuits against Smith), testimony by Mr. Cutuli that he had sent large

25   amount of money to Mr. Rupperecht (during a time that Rupprecht represented Smith and Cutuli

26   had pending lawsuits against Smith), testimony by Mr. Cutuli that he "may have" provided funds

27   to Mr. Rupprecht to be "held" in the attorney's client-trust account, a review of Trial Exhibits 190

28   and 191 suggesting apparent documentation of trips and contacts in locations such as the Isle of

1   Jersey, Isle of Man, and Cayman Islands, known to the court to be havens for off-shore banking,

2   and Mr. Cutuli's repeated impeachment at trial on these issues, there was sufficient evidence to

3   support a finding of fraud with respect to the services being provided by Mr. Rupprecht. As such,

4   pursuant to Evidence Code section 956, no privilege could be claimed.

5           C.      **Continuation and Conclusion of Trial**

6           In the afternoon of October 3, 2011, Elie called Stephen Morgan to the stand for

7   testimony. On October 4, 2011, Elie called Kevin Sachs and Lori Jacobson to the stand for

8   testimony and then rested. Closing arguments were heard from Elie and Cutuli's counsel. The

9   court then issued a tentative ruling in favor of Elie on all counts and granted leave to re-open

10  plaintiff's case to permit alternative evidence of damages as to the abuse of process claims.

11          On October 6, 2011, the court granted the stipulation of both parties permitting such

12  evidence of damages to be submitted by declaration rather than live testimony. The court

13  accepted the declaration of Allonn E. Levy in support of damages into evidence at which point

14  the case was again submitted and this statement of decision and accompanying judgment ensued.

15                                          III.

16                          **FINDINGS OF FACT AND LAW**

17          Based on the evidence adduced at trial, the court makes the following findings:

18          A.      **General findings:**

19          The court adopts its comments made at the conclusion of trial indicating that Mr. Cutuli

20  appeared to be one of the greatest prevaricators the court had seen in over 30 years of experience.

21  The court finds that Mr. Cutuli was evasive, contradicted himself, was impeached by his own

22  prior testimony and by documentary evidence and appeared to the court to have committed

23  perjury while testifying in trial. Mr. Cutuli repeatedly struggled to keep his stories straight and

24  commonly paused for long periods of time and/or requested to have questions read back to him in

25  what appeared to the court to be efforts to contrive information or plot responses that would be

26  less damaging to his position. Cutuli had the opportunity to present evidence, to explain

27  circumstantial evidence that appeared damaging, and to distance himself from Ms. Smith's

28  activities. Instead, Cutuli appeared to adopt and attempt to further Ms. Smith's plan. Based upon

1    the court's observations of Cutuli as a witness the court finds him to be not credible.

2          The court finds the testimony of third-party witnesses Shane Campbell, Steve Morgan,

3    Kevin Sachs, and Lori Jacobson to be credible.

4          The court heard substantial evidence suggesting Cutuli and/or others engaged in the

5    removal or destruction of evidence. Specifically, the court finds that Cutuli engaged in, conspired

6    to, or directed, the removal or destruction of evidence including 10 bankers-boxes of documents

7    relating to Smith, Cutuli, and the various entities they controlled from the 1070 Orchard Avenue

8    home as well as 5-6 truckloads of information and personal property from the Napa Smith

9    Brewery& Winery LLC ("NSBW"). Cutuli also directed individuals at Pelican Brands to attempt

10   to hide the existence of key documents relating to the sale of Napa Smith Brewery and Winery

11   LLC's assets. Based upon the foregoing, the court finds that with a culpable state of mind, Cutuli

12   and his co-conspirators engaged in the destruction or suppression of evidence that was relevant to

13   the proceeding and based on the same makes an adverse inference against Cutuli and in favor of

14   Elie that such evidence would have been unfavorable to Cutuli and favorable to Elie. (*Reeves v.*

15   *MV Transp., Inc.,* (2010) 186 Cal. App. 4th 666). The court also finds adverse inferences are

16   appropriate for Cutuli's failure to deny evidence presented against him and failure to provide

17   better or different evidence pursuant to Evidence Code Sections 412 and 413.

18         The Court finds that Cutuli conspired with Smith and each of the defaulting entity

19   defendants to delay and defraud creditors, to destroy or hide evidence, to engage in abuse of court

20   processes, and to harm Elie. It appears to the court from the evidence adduced that Smith's

21   counsel, Mr. Michael Rupprecht participated in activities to further said acts of fraud.

22         **B.     The Court Finds Elie Prevails on Each Cause of Action Seeking To Establish
               a Fraudulent Transfer**
23

24         The Court finds that based on the evidence adduced at trial Elie has prevailed on each

25   claim for Fraudulent Transfer. Specifically, Elie has proven an actual (intentional) fraudulent

26   transfer between the debtor disposing of the property and the purchaser. The court finds

27   sufficient evidence to support the following factors (set forth in Civil Code section 3439.04(a)(1))

28   suggesting an actual fraudulent transfer as to each alleged fraudulent transfer claims:

HOPKINS & CARLEY
Attorneys At Law
San Jose

357\879904.4                              - 6 -

STATEMENT OF DECISION AFTER COURT TRIAL

1      • The transfer or obligation was to an insider;

2      • The debtor retained possession or control of the property transferred after the transfer;

3

4      • The transfer or obligation was concealed;

      • The transfer was made or obligation was incurred when the debtor had

5        already been threatened with a lawsuit and had already been sued;

6      • The transfer were of substantially all of the debtor's assets that were readily reachable or discoverable because substantial assets had been

7        hidden from creditors;

8      • The debtor absconded;

9      • The debtor removed or concealed assets;

10      • The value of the consideration received by the debtor was <u>not</u> reasonably equivalent to the value of the asset transferred or the amount

11        of the obligation incurred;

12      • The transfer occurred shortly before or shortly after a substantial debt was incurred; namely shortly after the demand for payment, initiation

13        of the lawsuit, and in many instances actual judgment;

14      • Many of the transactions occurred after the judgment was entered;

15      • Both Cutuli and Smith were at all relevant times aware of the claim of debt, of the lawsuit, and of the eventual judgment.

16

17      Alternatively, the court finds sufficient evidence for a finding of constructive fraudulent

18 transfer was shown at trial.  (See Civ. Code § 3439.04(a)(2)).

19

20      With respect to each transfer or transmutation purported to have been accomplished by the

     April 25, 2008 Premarital Agreement (hereafter the "Pre-Nuptial") and the June 21, 2008

21

22 Addendum to the Premarital Agreement (hereafter the "Addendum"), the court finds each

     purported transfer or transmutation to be ineffective because the Pre-Nuptial and Addendum both

23

24 contemplate a future transfer, and do not contain the requisite express declaration of a present

     transmutation.    (See *In re Marriage of Lund* (2009) 174 Cal.App.4th 40, 50 (citing Cal. Fam.

25

26 Code § 852)).  The court further finds that the Pre-Nuptial Agreement required any amendment to

     be notarized and finds that the Addendum Agreement was not notarized and therefore was void

27

28 and unenforceable as an amendment to the Pre-Nuptial Agreement.  Alternatively, any

1    transmutation or transfer that would have been completed through the June 21, 2008 Addendum

2    to the April 25, 2008 Premarital Agreement was fraudulent and made for no consideration and

3    with the intent to hinder, delay, and defraud her creditors, including Elie.  As such, court finds

4    that each such transfer was fraudulent under Civil Code Section 3439.04.  The court finds that to

5    the extent any transfer was accomplished, Cutuli received the benefit of the transfer with actual

6    knowledge and intent to assist Smith in defrauding her creditors, including Elie.  As such, Cutuli

7    is not a good faith transferee under Civil Code Section 3439.08(a).  Accordingly, each of Smith's

8    attempted transfers contained within the Pre-Nuptial and Addendum Agreements are null and

9    void pursuant to Civil Code Section 3439.07(a)(1)

10          The court finds that neither Elie nor any other creditor was a party to the Pre-Nuptial

11    Agreement and that Cutuli and Smith's attempted assignment of debts as separate property in the

12    Pre-Nuptial Agreement is unlawful and unenforceable pursuant to Family code Section 900, 910,

13    *et seq.* and Civil Code Sections 1667, 1668, *et seq.* (See, Hogoboom & King, Cal. Practice Guide:

14    Family Law (The Rutter Group 2010) Ch. 9, ¶ 9:78).  Alternatively, the court finds that said

15    attempted transmutation of debt was fraudulent for the same reasons as applicable to the

16    remaining transfers within that document.  (See Fam. Code § 851, *State Board of Equalization v.*

17    *Woo* (2000) 82 Cal.App.4th 481, 484 ["Family Code Section 851 provides that '[a] transmutation

18    is subject to the laws governing fraudulent transfers.'  Civil Code Section 3439.04, subdivision

19    (a) provides that a transfer is fraudulent as to a creditor if it is made '[w]ith actual intent to hinder,

20    delay, or defraud any creditor of the debtor.'"]).

21          Here, Elie was able to prove either, or both, actual and constructive fraudulent transfers as

22    to each of the transactions at issue.  Further, in each applicable instance (except as specifically

23    indicated), the court finds that the relevant defendant was not a good faith transferee under Civil

24    Code Section 3439.08(a).

25              1.    **Elie Prevails on His Claims Seeking to Establish the Automobile**
26                    **Transfers As Fraudulent And To Recover Damages for That Fraud**

27          The court finds that Smith's transfer of three high-value automobiles (a Porsche, a BMW,

28    and Tesla) to Cutuli were made with actual intent to hinder, delay, and defraud Elie, and thus

1    constitute actual fraudulent transfers. Specifically, Smith and Cutuli were both present in the

2    courtroom when Elie's judgment was entered, and were plainly aware of the judgment when, just

3    a few weeks later, Smith transferred the automobiles to Cutuli for zero consideration. Applying

4    the "actual intent" factors found in Section 3439.04 the court finds strong evidence of fraud.

5    Specifically:

6           • Smith's transferred the automobiles to her husband, an "insider";

7           • Smith and Cutuli retained possession and control of the automobiles after the

8               transfer, until Cutuli sold the automobiles and kept the proceeds;

9           • The transfer was concealed from Elie;

10          • Before the transfers were made, Smith had been threatened with suit, had been

11              sued and had already had judgment entered against her;

12          • Smith absconded following the transfer and a $100,000 Bench Warrant for her

13              arrest remains outstanding;

14          • Smith concealed several assets;

15          • The value of the consideration received by Smith was $0 and was not reasonably

16              equivalent to the value of the automobiles, which was at least $340,000;

17          • Finally, Smith made the transfer shortly after a substantial debt in the amount of

18              nearly $6 Million was incurred to Elie.

19        In the alternative, the court finds Smith's transfers of automobiles constitute constructive

20    fraudulent transfers because Smith received no consideration for the transfers *and* intended to

21    incur, or believed or reasonably should have believed that she would incur debts beyond her

22    ability to pay as they became due. (See Civ. Code § 3439.07(a)(2)(B)).

23        Accordingly, whether Smith's transfer of automobiles to Cutuli constitutes actual or

24    constructive fraudulent transfer, Elie is entitled to a judgment against Cutuli for the value of the

25    automobiles pursuant to Civil Code Section 3439.08(b)(1).

26            2.    **Elie Prevails on His Claim Seeking to Establish the Bracknell
                   Refinance of 1070 Orchard Avenue, As Well As Other Cash Transfers,**
27                 **as Fraudulent Transfers and for Injunctive Relief**

28        The court finds that funds were diverted by Cutuli and Smith with the assistance and use

1  of various accounts held in the names of entities controlled by Smith and Cutuli which had the

2  effect of transferring monies from Smith to Cutuli in an apparent effort to remove those monies

3  from the reach of creditors. Specifically, substantial evidence demonstrates several large

4  transactions between Kathleen Smith, Greg Cutuli and in many cases, Kathleen Smith's counsel,

5  Michael Rupprecht. When questioned about the transfers at trial Cutuli either denied their

6  existence – only to be impeached by the documentary evidence, or feigned a lack of knowledge of

7  the transactions. Cutuli admitted the transactions were genuine, but offered no legitimate, good-

8  faith explanation for the transactions.

9      The court finds that Cutuli was earning approximately $60,000 per year and that Cutuli

10  admitted that most of the couples' monies were generated by Kathleen Smith. Thus, the large

11  transactions at issue were necessarily transactions involving the funds of Kathleen Smith. Cutuli

12  was impeached on various transactions involving proceeds from property in Sayulita Mexico,

13  which Cutuli eventually admitted was a commercial and residential rental property owned by

14  Smith for which Cutuli was collecting rents owned by Smith. Mr. Cutuli eventually admitted to

15  taking funds from Smith, admitted that he acted as a conduit for Smith, admitted that he had an

16  "arrangement" with Smith to handle her business affairs while she avoided an outstanding bench

17  warrant, and admitted that he paid moneys to and received monies from Smith's attorney –

18  Michael Rupprecht. Cutuli also admitted he may have transferred money to Rupprecht in order to

19  have the attorney hold those funds in the attorney's trust account. The Court finds that Cutuli and

20  Smith engaged in a fraudulent conspiracy to transfer funds away from the reach of creditors, to

21  delay and hinder creditors and collection efforts, to fraudulently transfer funds to Cutuli and other

22  entities controlled by Smith and Cutuli, , and to hide funds.

23      The court finds that in furtherance of the conspiracy between Smith and Cutuli, the

24  couple, at minimum, used attorney Rupprecht's services in furtherance of the conspiracy to

25  fraudulently transfer and hide funds. The court further finds that a sufficient showing was made

26  at trial that the services of Mr. Rupprecht had been "sought or obtained to enable or aid [one or

27  more individuals] to commit or plan to commit a crime or fraud." (Cal. Evid. Code §956).

28  Specifically, the court finds that based upon Mr. Cutuli's testimony at trial, documentary

1    evidence of substantial transfers of funds to and from Mr. Rupprecht, evidence of Cutuli's

2    ongoing discussions with Mr. Rupprecht (during a time that Rupprecht represented Smith and

3    Cutuli had pending lawsuits against Smith), testimony by Mr. Cutuli that he had sent large

4    amount of money to Mr. Rupperecht (during a time that Rupprecht represented Smith and Cutuli

5    had pending lawsuits against Smith), testimony by Mr. Cutuli that he "may have" provided funds

6    to Mr. Rupprecht to be "held" in the attorney's client-trust account, a review of Trial Exhibits 190

7    and 191 suggesting apparent documentation of trips and contacts in locations such as the Isle of

8    Jersey, Isle of Man, and Cayman Islands, known to the court to be havens for off-shore banking,

9    and Mr. Cutuli's repeated impeachment at trial on these issues, there is sufficient evidence to

10    support a finding of fraud with respect to the services being provided by Mr. Rupprecht and

11    therefore finds that any documents or evidence that would otherwise have been shielded by the

12    attorney-client or attorney work product privilege are offered no such protection.

13        The Court finds Cutuli and Smith's refinance of their residence at 1070 Orchard Avenue,

14    Napa, constitutes a fraudulent transfer. Specifically, Smith had been enjoined from transferring

15    or encumbering any property by the San Mateo Court's September 25, 2009 Order. In direct

16    violation of the Order, Cutuli and Smith further encumbered the 1070 Orchard property in the

17    amount of $1,000,000. This decreased the equity value in the property, which would otherwise

18    have been available for levy by Elie. Cutuli and Smith converted the equity value to cash, and

19    both absconded with the funds, which have been concealed or removed forever beyond the reach

20    of Elie's judgment. Cutuli initially claimed little or no knowledge of the transaction, but later

21    contradicted himself and conceded that he had "facilitated" the transaction for the benefit of

22    Smith, had directed brokers and Smith's lawyers in connection with the transaction, had as many

23    as 20 contacts with the lender's agents, was the lender's primary contact, and received e-mails

24    addressing the funds as Cutuli's.

25        The Court finds the following "actual intent" factors found in Section 3439.04 yield a

26    strong inference of fraud:

27        • Smith effectively caused the transfer of the equity and cash to herself and her

28            husband, both of whom are "insiders";

1      • Smith and Cutuli retained possession and control of the 1070 Orchard residence
2          and the loan proceeds after the transfer and retained the use and enjoyment of the
3          various funds transferred;
4      • The transfers was concealed from Elie and were initially concealed in court;
5      • Before the transfers were made, Smith had been threatened with suit, had been
6          sued and had already had judgment entered against her;
7      • Smith absconded following the transfers and a $100,000 Bench Warrant for her
8          arrest remains outstanding;
9      • Smith concealed several assets;
10     • Finally, Smith made the transfer shortly after a substantial debt in the amount of
11         nearly $6 Million was incurred to Elie.

12     The lender, Bracknell Capital, has established that it was a "good faith transferee" and is

13 not liable for fraudulent transfer under Civil Code Section 3439, *et seq*. Elie has reached a

14 settlement with Bracknell, and there are no longer any claims at issue against Bracknell.

15 However, Smith and Cutuli remain liable for the value of the asset transferred, $1,000,000, under

16 Civil Code Section 3439.08(b)(1). The court finds that section establishes that Cutuli and Smith

17 are liable as the parties "for whose benefit the transfer was made." (*Id.*).

18          **3.    Elie Prevails on His Claim Seeking to Establish the Napa Smith
               Brewery & Winery "Side-Deals" as Fraudulent Transfers, for**
19             **Injunctive Relief, and Constructive Trust**

20     Napa Smith Brewery & Winery LLC and Smith have both defaulted. As such, the

21 allegations of alter-ego between the entity and judgment debtor Smith are established such that

22 the liabilities and assets of the two are interchangeable. Moreover, the proceeds of any monies

23 that could otherwise flow to Cutuli or Smith based upon their claimed interest in NSBW must

24 instead be directed to the appointed receiver pursuant to the issued charging orders. Moreover,

25 the court finds that as an alter-ego, any monies flowing to NSBW from the sale are payable to

26 Elie based upon the alter-ego liability of NSBW for the liabilities of the couple.

27     Smith and Cutuli's diversion of sales proceeds into three "side-deals" in a failed effort to

28 hide those assets from creditors – and specifically Elie – was fraudulent and the monies stemming

1    from those deals must be turned over to Elie.  The evidence shows that these "side-deals" were

2    nothing more than a re-allocation of some of the value attributable to NSBW's assets into cash to

3    be directed toward Smith and Cutuli.  While Cutuli initially attempted to actively hide the

4    existence of some of these transactions, they were all eventually uncovered.

5        The Court finds that Kathleen Smith was at all times the proper 100% owner of Napa

6    Smith Brewery and Winery and that Pre-Nuptial Agreement and Addendum as well as the

7    transaction and "side-deals" were an attempt to further hamper Elie's efforts to collect on the debt

8    owed to him by changing one asset (the value of the NSBW LLC) into another (a stream of

9    income created through contractual obligations).   As with the other transactions, the court finds

10   nearly all of the Section 3439.04 "actual intent" factors are satisfied with respect to the purported

11   transfers of ownership within the Pre-Nuptial and Addendum agreements, the sale of the LLC's

12   assets, and the creation of the associated side-deals.  Specifically:

13       • Smith and Cutuli retained possession and control of the LLC after the alleged

14         partial transfer to Cutuli and after the sale of the NSBW assets, with the right to

15         receive payments under the Asset Purchase Agreement at an unknown point in the

16         future, as well as the right to receive payments under the "side agreements;"

17       • The original Pre-Nuptial and Addendum as well as the sale of the LLC assets and

18         "side agreements" diverting sales proceeds were concealed from Elie, the

19         Receiver, and the Court; before the transaction occurred;

20       • Cutuli was aware that Smith had been threatened with suit, had been sued, and

21         judgment had been rendered prior to the transaction and had been threatened with

22         suit and actually sued prior to the execution of the Pre-Nuptial and Addendum;

23       • Smith absconded and a $100,000 Bench Warrant for her arrest remains

24         outstanding and Cutuli absconded during this trial;

25       • Smith concealed several assets;

26       • Cutuli and Smith made the initial Pre-Nuptial and Addendum agreements shortly

27         after the claim was made and after the lawsuit was filed.  They made the sale

28         transfer shortly after Smith's interest in the LLC was charged with a substantial

1    debt in the amount of Elie's nearly $6 Million Judgment.

2    Accordingly, the court finds the Pre-Nuptial, Addendum, the sale of Napa Smith Brewery

3    & Winery, LLC's assets and the associated side-deals all constitute actual fraudulent transfers.

4    As such, Elie will be granted the provisional remedies set forth in Section 3439.07, including

5    attachment of all proceeds due under the purchase and sale and the "side agreements"; injunctive

6    relief directing all proceeds be transferred to Elie or his designee; and appointment of a receiver

7    to take charge of the LLC and all sales proceeds for Elie's benefit, and imposition of a

8    constructive trust over all proceeds flowing from the transaction (Civ. Code § 3439.07(a)(3)).

9        **4.    Elie Prevails on His Claims Seeking to Set Aside Cutuli's Judgment As a Fraudulent Transfer, for Injunctive Relief, and Constructive Trust**

10

11    The court finds that part of Smith and Cutuli's conspiracy to avoid creditors, including

12    Elie, involved using Cutuli's lawsuit against his wife and co-conspirator as an instrumentality

13    through which the couple could transfer assets from Smith to her husband. The court finds that

14    Smith, while working with Cutuli to sell the couple's business, while engaging in numerous cash

15    transactions with Cutuli, and while large sums of money flowed to and from Smith's counsel

16    Michael Rupprecht, allowed Cutuli to enter Judgment against her. Because Elie was not a party

17    to the judgment, he lacked standing to object to the entry of judgment or to attack the judgment

18    by motion. (See e.g. Cal. Code Civ. Proc. §473(b).). The result was effectively a $10,000,000

19    blank check to Cutuli that would allow the couple to transfer Smith's assets from Smith to Cutuli

20    in furtherance of their scheme to hamper Elie's efforts to collect on his Judgment. The court

21    finds that Cutuli's argument that the lawsuit, judgment, and amount of judgment were supportable

22    were not credible. The court finds that extrinsic fraud exists with respect to the Cutuli-Smith

23    Complaint, *lis pendens,* and judgment and that said complaint and judgment are being used as an

24    instrumentality of fraud.

25    The court finds, nearly all of the Section 3439.04 "actual intent" factors are satisfied

26    resulting in a finding of actual fraudulent intent. For example:

27        • Enforcement of Cutuli's Judgment would effectively transfer Smith's assets to an

28          insider – Smith's husband, Gregory Cutuli;

1    • Details regarding the identity and location of the assets to be transferred have also

2    been concealed, for example, Cutuli did not initially serve Elie with his complaint

3    despite Cutuli's knowledge of Elie's lien on the relevant property;

4    • Smith has thwarted discovery efforts, failed to appear for her OEX, and has

5    continued to evade the Napa Sheriff's service of the resulting bench warrant;

6    • The Cutuli-Smith Complaint that resulted in Cutuli's judgment, was initiated

7    shortly after Elie had obtained the judgment against Smith and long after Smith

8    and Cutuli were aware of the potential liability;

9    • Smith has absconded as demonstrated by Smith's failure to appear at her OEX and

10    the inability of the Napa County Sheriff to locate Smith to serve the Bench

11    Warrant, which remains outstanding. Cutuli absconded during this trial;

12    • Smith plainly did not receive reasonably equivalent value in exchange for allowing

13    Cutuli's Judgment to be entered against her. In fact, Smith received no

14    consideration.

15    Accordingly, Cutuli's Judgment against Smith constitutes an actual fraudulent transfer,

16    and Elie is entitled to the relief set forth below.

17    In the alternative, Cutuli's Judgment constitutes a constructive fraudulent transfer because

18    Smith did not receive any consideration in exchange for allowing Cutuli's judgment to be entered

19    against her, *and* Smith intended to incur, or believed or reasonably should have believed that she

20    would incur debts beyond her ability to pay as they became due. (See Civ. Code

21    § 3439.07(a)(2)(B)). This is underscored by the fact that Smith has failed to satisfy the sizeable

22    debt to Elie, and by the fact that Smith has since defaulted on mortgage obligations leading to

23    foreclosures on multiple properties.

24    Whether Cutuli's judgment is considered an actual fraudulent transfer or a constructive

25    fraudulent transfer, Elie is entitled to the provisional remedies set forth in Section 3439.07,

26    including but not limited to avoidance of Cutuli's judgment, an injunction prohibiting Cutuli from

27    enforcing his judgment, and appointment of a receiver. The court also has broad discretion to

28    grant "[a]ny other relief the circumstances may require," including an order setting aside Cutuli's

1    judgment, assigning the judgment to Elie, or the imposition of a constructive trust as set forth

2    below.  (Civ. Code § 3439.07(a)(3); 60 Cal.Jur.3d Trusts § 343 (Thomson Reuters 2011)

3    [constructive trusts] (citing *Bainbridge v. Stoner* (1940) 16 Cal.2d 423)).  The court finds

4    sufficient evidence to set the judgment aside.  Alternatively, the court finds sufficient evidence to

5    impose a constructive trust on the proceeds from said judgment, to enjoin enforcement of said

6    judgment until the judgment in this case and the underlying case have been satisfied, and

7    directing Cutuli to turn over all funds collected pursuant to his judgment to Elie.

8    　　　　　C.　　　**Elie Prevails on His Claim for Abuse of Process**

9    　　　　　The court finds that in filing the Smith-Cutuli Complaint , filing the related *lis pendens*,

10   opposing the motion to expunge the *lis pendens*, and causing default Judgment to issue, Smith

11   and Cutuli: "(1) contemplated an ulterior motive in using the process, and (2) committed a willful

12   act in the use of the process not proper in the regular conduct of the proceedings." (*Rusheen v.*

13   *Cohen* (2006) 37 Cal.4th 1048, 1057, citing *Oren Royal Oaks Venture v. Greenberg, Bernhard,*

14   *Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168.) The Restatement Second of Torts, section

15   682 provides: "One who uses a legal process, . . . against another primarily to accomplish a

16   purpose for which it is not designed, is subject to liability to the other for harm caused by the

17   abuse of process."

18   　　　　　"The gist of the tort is the misuse of the power of the court: It is an act
     done under the authority of the court for the purpose of perpetrating an
19   injustice, i.e., a perversion of the judicial process to the accomplishment of
     an improper purpose. Some definite act or threat not authorized by the
20   process or aimed at an objective not legitimate in the use of the process is
     required. And, generally, an action lies only where the process is used to
21   obtain an unjustifiable collateral advantage."

22   (*Younger v. Solomon* (1974) 38 Cal.App.3d 289, 297 [claim that litigation discovery process was

23   used for collateral purpose of injuring party's reputation stated a cause of action for abuse of

24   process.]).

25   　　　　　Here, the court finds Cutuli and Smith have repeatedly used numerous court processes to

26   accomplish an improper purpose unconnected with the legitimate stated objective of the litigation.

27   Specifically, the court finds the testimony of Cutuli as to the timing of the complaint to be

28   illustrative of such an ulterior motive, including Cutuli's admission that he filed the action shortly

1   after the judgment and immediately prior to the time when Elie could have filed an abstract (thus

2   establishing lien priority).  Cutuli offered no alternate explanation for the timing of the complaints

3   other than the theory offered by Elie.  The court further finds the testimony of Lori Jacobson, the

4   personal secretary and close confidant of the couple, to be persuasive.  Jacobson's testimony that

5   she was shocked to discover the lawsuit and that relations between Smith and Cutuli did not seem

6   strained during the time the lawsuit was pending as well as testimony indicating that Cutuli was

7   cooperatively interacting with both Smith and her attorney, Michael Rupperecht, while the

8   actions were pending is persuasive.  The court finds that the complaint Cutuli filed against his

9   wife was never intended to resolve an actual dispute between the two.  To the contrary, the

10  October 26, 2009 complaint against Smith, the associated *lis pendens*, the associated amendment,

11  and the associated judgment were all filed with the intent to first hamper Elie's ability to liquidate

12  the 1070 Orchard Avenue property by improperly encumbering it, and subsequently the intent to

13  obtain a default judgment against Smith in order to effectuate a *de facto* transfer of assets from

14  Smith to Cutuli using the $10,000,000.00 default judgment obtained by Cutuli. *Findings set forth in*
    *the accompanying judgment and expressly finds that attorney Rose and his firm engaged in*

15      D.      **Elie Prevails on His Claims for Conspiracy** *no misconduct. Mr. Rose acted ethically*
    *with respect to this case.*

16          The court finds that a civil conspiracy has been shown in that evidence adduced at trial

17  demonstrated: (1) the formation of the conspiracy between Cutuli, Smith, their entities and others;

18  (2) operation of the conspiracy; and (3) damage resulting from operation of the conspiracy.  (See

19  12 Cal.Jur.3d Civil Conspiracy § 2 (2011) (citing *People v. Beaumont Inv., Ltd.* (2003) 111

20  Cal.App.4th 102)).  The court finds that Smith and Cutuli conspired together with respect to each

21  of the transactions at issue including, the transfer of large sums of money between Smith, Cutuli

22  and in some cases attorney Michael Rupprecht, the transfer of cars, the attempted transfer of

23  properties and ownership rights through the Pre-Nuptial and Addendum agreements, the

24  fraudulent lawsuits filed, the transaction for the sale of NSBW, the fraudulent entry of default

25  judgment against Smith, the negotiation of "side-deals" (including efforts to transfer and hide

26  monies through those side-deals) and the attempted use of the bankruptcy court to facilitate a

27  transfer of the ownership of 1 Executive Way to Cutuli.  The court further finds Cutuli's wrongful

28  conduct during the trial, his tendency toward prevarication while testifying, and his failure to

*The court adopts the*

1  provide evidence to explain the facts adduced to be further evidence of Cutuli's continual active

2  involvement in the conspiracy with Smith and the entity defendants.

3      **E.      Elie Prevails on His Claim for Alter-Ego Against Smith and the LLCs**

4          As an initial matter, Smith and the LLCs have all defaulted in this matter. These defaults

5  act as admissions of liability as to those entities and parties with respect to the allegations in

6  Elie's complaint, including the alter ego allegations against Smith and each of the entity

7  defendants. The claims against 1 Executive Way, LLC are stayed at this time and were not at

8  issue in this trial.

9          With respect to Smith, Cutuli and each of the remaining entity defendants (other than 1

10  Executive Way, LLC) the court finds that each was the alter-ego of the other. (*Robbins v.*

11  *Blecher* (1997) 52 Cal.App.4th 886, 892; *Communist Party v. 522 Valencia, Inc.* (1995) 35

12  Cal.App.4th 980, 993-94). The court finds that there exists such a unity of interest and ownership

13  between the entities and individuals that the separate personalities of each do not in reality exist,

14  and there would be an inequitable result if the acts in question are treated as those of the entities

15  or individuals alone. (*Automotriz etc. De California v. Resnick* (1957) 47 Cal.2d 792, 796;

16  *Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1358; *Alberto*

17  *v. Diversified Group, Inc.* (1995) 55 F.3d 201, 205). Substantial evidence was adduced at trial

18  indicating that monies were co-mingled between the individuals and entities and that there was no

19  distinction between them. Moreover, substantial inequity will occur but for the *alter ego* finding.

20  Specifically, absent such a finding, Smith and Cutuli will continue to be able to play their shell-

21  game of transferring assets between themselves and the various entities they control.

22                                          **IV.**

23                  **FINDINGS REGARDING DAMAGES & RELIEF**

24          Based on the foregoing, the court finds in favor of Elie on each of the claims that have not

25  been dismissed or rendered moot. The court makes the following findings with respect to

26  damages.

27      **A.      Compensatory Damages for Fraudulent Transfers**

28          With respect to the fraudulent transfer claims, the court finds sufficient evidence to award

1   the following damages to compensate the judgment creditor for losses incurred as a result of the

2   transfers:

| | |
|---|---|
| 3   1070 Orchard/Bracknell Refinancing Scheme | $1,000,000.00 |
| 4   2008 Tesla Transfer | $100,000 |
| 5   2007 BMW M-6 Transfer | $143,000 |
| 6   2004 Porsche Transfer | $100,000 |
| 7   Napa Smith Brewery Side Agreements | $350,000 |
| 8   Cash Transferred to Cutuli Acct. #381 | $996,921 |
| 9   Cash Transferred to Cutuli Acct. #455 | $1,145,330 |
| 10   TOTAL | $3,835,781.00 |

11        Although Elie has proven a total of at least $3,835,781.00 in compensatory damages, the

12   court has considered the evidence and finds the outstanding underlying judgment debt owed as of

13   October 12, 2011 to be $2,772,496.92, with interest accruing at a rate of $736.58 per day.

14   Therefore, the court limits compensatory damages for these claims to the amount of the debt

15   owed and awards compensatory damages in the amount of $2,772,496.92 for the various

16   fraudulent transfers.

17        **B.    Compensatory Damages for Abuse of Process.**

18        With respect to the Abuse of Process Claim, the court finds that Elie was harmed by the

19   abuse of process and that such damages to compensate for the harm take the form of the lost use

20   of the funds available from the 1070 property together with the total out-of-pocket expenditures

21   of Elie in this matter. The court finds this measure of damages to be more appropriate than

22   awarding the actual value of the 1070 property itself, which would yield a higher recovery. The

23   court finds the total amount of out-of-pocket expenses expended by Elie in this action amount to

24   $1,814,578.60 in fees and costs. The court finds the fees and costs to be reasonable in light of the

25   complexities of the case and the level of resistance employed by the parties and further finds that

26   said fees and costs were actually incurred by Elie.

27        The total value of the 1070 orchard property that was the subject of the original Complaint

28   in Intervention was approximately $3,766,666.66. The court reaches this figure by averaging the

1  valuations of 1070 Orchard Avenue presented by Smith and Cutuli at various points as set forth in

2  plaintiffs trial exhibits 10, 21, and 80.  The court finds that Elie was harmed by the delay in

3  obtaining said property as a result of defendants wrongful acts.  Specifically, Elie was denied the

4  right to the use of funds for at least 220 days between the October  26, 2009 filing of the Smith-

5  Cutuli Complaint and *lis pendens* and the  withdrawal of the *lis pendens* on June 3, 2010.

6  Applying the legal rate of interest of 10%, the court finds damages for the loss of use of the

7  monies to be at least $227,031.96.  The court finds the total damages for abuse of process needed

8  to make Elie whole, and which are therefore awarded, are as follows:

9       Attorneys Fees as An Element of Damages     $1,814,578.60

10       Interest on Monies Not Collected     $227,031.96

11       TOTAL     $2,041,610.56

12  **C.    Punitive Damages**

13       With respect to the intentional torts of Fraudulent Transfer, Conspiracy to Defraud, and

14  Abuse of Process, the court finds clear and convincing evidence of malice oppression and fraud

15  warranting the imposition of punitive damages.  Specifically, the court finds that clear and

16  convincing evidence of actual fraud has been proven with respect to the Abuse of Process,

17  Fraudulent Transfer and Conspiracy claims.  (*Kemp v. Lynch* (1937) 8 Cal.2d 457).  The court

18  finds that the Abuse of Process, Fraudulent Transfer, and Conspiracy claims were accompanied

19  by actual malice on the part of the defendants.  (*Spellens v. Spellens* (1957) 49 Cal.2d 210).

20       The court finds clear and convincing evidence that defendants acted with intent to cause

21  injury, that their conduct was despicable and was done with willful and knowing disregard of the

22  rights of Elie.  The court finds the defendants' conduct was despicable and subjected Elie to cruel

23  and unjust hardship in knowing disregard of his rights.  The court finds the conduct of each

24  defendant to be vile, base and contemptible such that it would normally be looked down upon and

25  despised by reasonable people.  The court further finds that defendants and each of them

26  intentionally misrepresented or concealed a material fact and did so intending to harm plaintiff.

27  The court finds the misconduct of defendants to have been part of a continuous pattern or practice

28  and finds that each defendant acted with trickery and deceit.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

357\879904.4     - 20 -

STATEMENT OF DECISION AFTER COURT TRIAL

1    Because of the defendants' misconduct, a precise picture of the defendants finances in

2    unknown. However, the court finds that based upon the personal finance statements in evidence,

3    the multiple accounts uncovered during trial demonstrating millions of dollars of transactions, the

4    high-value properties controlled by Smith and Cutuli, and the anticipated income stream from the

5    NSBW and 1 Executive Way liquidation, it is reasonable to infer that the defendants have access

6    to resources in the range of several tens to upwards of 100 million dollars. In order to punish the

7    defendants for their wrongful conduct, the court finds an award of three times the amount *in excess* of

8    compensatory damages to be appropriate. Therefore, the court awards punitive damages in the

9    amount of $ *10,000,000.00* 14,442,322.44.

10    The court finds by clear and convincing evidence there to be a reasonable relationship

11    between the amount of punitive damages awarded and Elie's harm and potential harm that

12    defendants knew was likely to result. The court finds by clear and convincing evidence that

13    defendants conduct was willful and malicious, and the harm was intentional or substantially

14    certain to occur, acts were intentional, wrongful, and necessarily caused injury to Elie.

15    **D.    Declaratory Relief, Conspiracy & Alter Ego Findings**

16    The court finds sufficient evidence to grant each of the following declarations requested in

17    the pleadings:

18    • All funds flowing from the transaction with Pelican Brands LLC and Napa Smith

19    Holdings, LLC as well as all funds flowing from the sale of 1 Executive Way are

20    available to satisfy Elie's judgment;

21    • The premarital agreement and addendum thereto did not effect any transfer of assets to

22    Cutuli and/or that any such transfer has been set aside;

23    • The vehicle transfers were fraudulent;

24    • Cutuli facilitated and assisted Smith in completing the 1070 Orchard Avenue

25    refinance, which effectuated a fraudulent transfer of assets away from the reach of

26    creditors.

27    • Cutuli's claims asserted in the Cutuli-Smith Complaint were meritless, and the *lis*

28    *pendens* and judgment asserted were fraudulent.

1    The court also finds sufficient evidence to support a finding of conspiracy as to all

2    defendants and to support a finding of alter-ego as to all defendants. The court finds that Cutuli,

3    Smith, and each of the entity defendants should be held jointly and severally liable for the

4    damages suffered by Elie as a result of the conspiracy and based upon the findings of alter-ego.

5    **E.    Constructive Trust, Setting aside Cutuli's Judgment, and Injunctive Relief**

6    The court finds sufficient evidence to grant each of the injunctions requested in the

7    pleadings and to impose a constructive trust over all proceeds from the NSBW transaction and the

8    proceeds of any distribution from the 1 Executive Way bankruptcy. (See, e.g., Civ. Code §

9    3439.07 (where fraudulent transfer established, court may grant injunctive relief and "any other

10   relief the circumstances may require.")). The court finds extrinsic fraud and sufficient cause to

11   set aside the judgment obtained by Cutuli in this action. The court finds there exists sufficient

12   evidence and cause to grant the injunctive relief requested including the mandatory injunction

13   directing payment of all proceeds from the NSBW transaction and the 1 Executive Way sale to

14   Elie or his designee. The court finds that absent the issuance of equitable relief, including

15   mandatory and prohibitory injunctions, great and irreparable injury would result.

16   **V.**

17   **DEFENSES**

18   As to each defense asserted in Cutuli's answer, the court finds the facts adduced at trial do

19   not support each defense. Because Cutuli has failed to establish any defense pled, Elie prevails as

20   set forth above.

21   **VI.**

22   **CONCLUSION**

23   With respect to Elie's claims in the Fraudulent Transfer Complaint, the court awards

24   compensatory damages in the amount of $2,772,496.92 against Cutuli and Smith and in favor of

25   Elie. With respect to Elie's claims in the Complaint in Intervention, the court awards

26   compensatory damages in the amount of $2,041,610.56 against Cutuli and Smith and in favor of

27   Elie. Accordingly, the total compensatory damages awarded to Elie and against Cutuli and Smith

28   is $4,814,107.48.

1    Because the court finds by clear and convincing evidence that Cutuli and Smith undertook

2    the actions described herein with malice, oppression, and fraud, the court awards punitive

3    damages against Cutuli and Smith and in favor of Elie in the amount of $~~14,443,322.44~~, $10,000,000.00

4    representing ~~three times~~ a multiple of the compensatory damages described herein. $14,814,107.78

5    Accordingly, the court awards a total monetary judgment in the amount of $~~19,236,429.92~~

6    against Cutuli, Smith and each of the entity defendants and in favor of Elie. Elie is found to be

7    the prevailing party in all respects based upon the court's findings that Elie has prevailed on all

8    causes of action that have not been expressly dismissed or deemed moot. Elie may separately

9    seek recovery of any costs not previously awarded as an element of damages.

10

11    **IT IS SO ORDERED, ADJUDGED, AND DECREED.**

12

13    Dated: Oct 13 , 2011        By: _____

14                                   Honorable Phillip A. Champlin
                                     Judge of the Superior Court

15

16    The parties having met and conferred with respect to the form of this statement of

17    decision, it is **APPROVED AS TO FORM:**

18

19    Dated: 10/13 , 2011        By: _____

20                                   James R. Rose
                                     THE LAW OFFICES OF JAMES R. ROSE
21                                   Attorneys for Defendant GREGORY CUTULI

22

23

24

25

26

27

28

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO._____ 16-20233

18 U.S.C. § 371
18 U.S.C. § 152(7)
18 U.S.C. § 152(1)
18 U.S.C. § 152(2)
18 U.S.C. § 981(a)(1)(C)

CR-ALTONAGA
/ O'SULLIVAN

UNITED STATES OF AMERICA

vs.

KATHLEEN ANNE SMITH CUTULI and
GREGORY LEE CUTULI,

                    Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all material times to this Indictment:

1.     Individuals who file for bankruptcy are known under federal bankruptcy law as "debtors."

2.     Bankruptcy is a process by which debtors obtain relief from their "creditors." Creditors are individuals, businesses, and government agencies who are owed money by the debtor. The bankruptcy process is designed to achieve the orderly distribution to creditors of available assets of the debtor that are truthfully disclosed. The bankruptcy process also provides a fresh start to debtors by allowing them to obtain a "discharge" of debts, that is, an order that releases the debtors from further personal liability for specified types of debts.

3.      Debtors may file for one of several different types of bankruptcy, commonly referred to as chapters. One of these types of bankruptcy is known as "Chapter 7." A Chapter 7 bankruptcy is a liquidation bankruptcy. Under Chapter 7 of the Bankruptcy Code, a "trustee" is appointed by the Bankruptcy Court to administer the case by marshalling and then liquidating all assets of the debtor in order to maximize recovery for creditors.

4.      The United States Trustee oversees the administration of all bankruptcy cases and private trustees, including Chapter 7 trustees.

5.      A debtor seeking shelter under bankruptcy laws must disclose all potential property and assets, whether worthless or not, whether in the debtor's name or in another's name, to creditors, the Chapter 7 trustee, the United States Trustee, and, ultimately, the United States Bankruptcy Court. The assets of a debtor, including all property or interests in property owned by the debtor, comprise what is called the "bankruptcy estate." Debtors are also required to disclose all liabilities and debts owed to creditors.

6.      Debtors are also required to file a Statement of Financial Affairs ("SOFA") with their petition for bankruptcy. The SOFA requires debtors to "[l]ist all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case." (Emphasis in original.) In submitting the SOFA, debtors must execute a "Declaration Under Penalty of Perjury by Individual Debtor," which provides the following declaration by the debtor: "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and my attachments thereto and that they are true and correct."

7.      On or about August 4, 2009, the California Superior Court (San Mateo) entered

2

judgment against **KATHLEEN ANNE SMITH CUTULI** for approximately $5,814,452 in the case of <u>Mehrdad Elie v. Kathleen Smith</u>, Case No. CIV-471364.

8.     On or about October 25, 2009, **GREGORY LEE CUTULI** filed a complaint in California Superior Court (Napa) against his wife, **KATHLEEN ANNE SMITH CUTULI**, for $10,000,000 in the case of <u>Greg Cutuli v. Kathleen Smith</u>, Case No. 26-50182.

9.     On or about November 17, 2010, a default judgment was entered for **KATHLEEN ANNE SMITH CUTULI** against her husband **GREGORY LEE CUTULI** in the case of <u>Greg Cutuli v. Kathleen Smith</u>, Case No. 26-50182.

10.     On or about August 27, 2010, **KATHLEEN ANNE SMITH CUTULI** and **GREGORY LEE CUTULI** opened a TIB/Capital Bank account ending in 2406 ("Capital Bank Account") using their names, dates of birth, and social security numbers. **KATHLEEN ANNE SMITH CUTULI** and **GREGORY LEE CUTULI** were the only authorized signatories on the Capital Bank Account.

11.     On or about October 25, 2010, **GREGORY LEE CUTULI**, doing business as Right Angle Charter, opened a First State Bank of the Florida Keys bank account ending in 8726 ("First State Bank Account") using his name, date of birth, and social security number. **GREGORY LEE CUTULI** was the sole owner and authorized signatory on the First State Bank Account.

12.     On or about January 13, 2011, **KATHLEEN ANNE SMITH CUTULI** received a federal income tax refund in the amount of $1,819,068 which was deposited into the Capital Bank Account.

13.     On or about September 12, 2011, in Miami-Dade County, in the Southern District of Florida, **KATHLEEN ANNE SMITH CUTULI** filed a personal Chapter 7 bankruptcy as

debtor captioned <u>In re: KATHLEEN ANNE SMITH CUTULI</u>, Bankruptcy Case No. 11-35256-AJC, in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Filing").

14.    **KATHLEEN ANNE SMITH CUTULI** disclosed in Schedule B of her Bankruptcy Filing that she had only $9,000 in cash on hand as of the petition date.

15.    **KATHLEEN ANNE SMITH CUTULI** disclosed in Schedule B of her Bankruptcy Filing that the current value of furs and jewelry for which she had an interest was $250.

16.    **KATHLEEN ANNE SMITH CUTULI** disclosed in Schedule B of her Bankruptcy Filing that the current value of household goods and furnishings for which she had an interest was $0.

17.    On or about October 13, 2011, a California Superior Court (Napa), in the case of <u>Mehrdad Elie v. Kathleen A. Smith, et al.</u>, Case No. 26-53342, entered judgment after trial against **KATHLEEN ANNE SMITH CUTULI** and **GREGORY LEE CUTULI** finding that the October 25, 2009, complaint filed by **GREGORY LEE CUTULI** in California Superior Court (Napa) against his wife, **KATHLEEN ANNE SMITH CUTULI**, in the case of <u>Greg Cutuli v. Kathleen Smith</u>, Case No. 26-50182, was filed with the intent to fraudulently transfer $10,000,000 to **GREGORY LEE CUTULI** and avoid paying $14,814,107.48 in damages to Mehrdad Elie, in the case of <u>Mehrdad Elie v. Kathleen A. Smith, et al.</u>, Case No. 26-53342.

18.    On or about November 14, 2011, in Miami-Dade County, in the Southern District of Florida, **KATHLEEN ANNE SMITH CUTULI** amended her September 12, 2011, Bankruptcy Filing (the "Amended Filing").

19.    **KATHLEEN ANNE SMITH CUTULI** disclosed in Schedule B of her

Amended Filing that she had only $9,000 in cash on hand as of the petition date.

20. **KATHLEEN ANNE SMITH CUTULI** disclosed in Schedule B of her Amended Filing that the current value of furs and jewelry for which she had an interest was $250.

21. **KATHLEEN ANNE SMITH CUTULI** disclosed in Schedule B of her Amended Filing that the current value of household goods and furnishings for which she had an interest was $0.

22. On or about January 27, 2012, the United States Trustee appointed in **KATHLEEN ANNE SMITH CUTULI's** bankruptcy case conducted a surprise inspection of **KATHLEEN ANNE SMITH CUTULI's** residence located at 88170 Overseas Highway, in Islamorada, Florida (the "Islamorada Property"). During that surprise inspection the trustee recovered $117,404 in cash from a safe inside of the Islamorada Property as well as property belonging to **KATHLEEN ANNE SMITH CUTULI** that was not disclosed in her Bankruptcy Filing or in her Amended Filing.

23. On or about May 19, 2012 and May 20, 2012, the United States Trustee conducted an auction of the property belonging to **KATHLEEN ANNE SMITH CUTULI** which was recovered during the surprise inspection of the Islamorada Property. The trustees sold approximately $32,000 of jewelry and approximately $114,000 of household goods and furnishings.

24. On or about May 14, 2012, in Miami-Dade County, in the Southern District of Florida, the bankruptcy court denied **KATHLEEN ANNE SMITH CUTULI's** discharge from bankruptcy.

## COUNT 1
### Conspiracy to Fraudulently Transfer or Conceal Property
### In Contemplation of a Case Under Title 11
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 24 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around October 2009, through in or around May 2013, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### KATHLEEN ANNE SMITH CUTULI and
### GREGORY LEE CUTULI,

did knowingly and willfully combine, conspire, confederate, and agree with each other to commit an offense against the United States, that is, in a personal capacity and as agent of another person, in contemplation of a case under title 11 by **KATHLEEN ANNE SMITH CUTULI**, and with the intent to defeat the provisions of title 11, to knowingly and fraudulently transfer and conceal, and cause to be transferred and concealed, the property of **KATHLEEN ANNE SMITH CUTULI**, that is, a federal income tax refund in the amount of $1,819,068, in violation of Title 18, United States Code, Section 152(7).

### PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for the defendants to falsely and fraudulently transfer and conceal property and to falsely and fraudulently declare bankruptcy to avoid paying moneys owed to a former business partner of **KATHLEEN ANNE SMITH CUTULI** arising from the case of <u>Mehrdad Elie v. Kathleen A. Smith, et al.</u>, Case No. 26-53342.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the purpose and object thereof, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.  On or about February 4, 2011, **GREGORY LEE CUTULI** withdrew $1,821,421.52 from the Capital Bank Account.

2.  On or about April 15, 2011, **GREGORY LEE CUTULI** deposited $1,821,421.52 in the First State Bank Account which was solely controlled by him.

3.  On or about May 18, 2011, **GREGORY LEE CUTULI** wired $1,053,323.79 from his First State Bank Account to the Coral Reef Title Company for the purchase of the Islamorada Property which was deeded to Native Blue Waters, Inc., a Bahamian Limited Liability Company.

4.  On or about October 12, 2011, Native Blue Waters, Inc. deeded the Islamorada Property to **KATHLEEN ANNE SMITH CUTULI** and **GREGORY LEE CUTULI**. **GREGORY LEE CUTULI** signed the deed on behalf of Native Blue Waters, Inc.

5.  In the Bankruptcy Filing, **KATHLEEN ANNE SMITH CUTULI** failed to disclose the $1,819,068 federal income tax refund deposited into the Capital Bank Account.

6.  In the Bankruptcy Filing, **KATHLEEN ANNE SMITH CUTULI** listed the Islamorada Property, which was purchased with a portion of the $1,819,068 federal income tax refund, as exempt property pursuant to Florida exemption, Fla. Const. Art. X, § 4(a)(1) and Fla. Stat. Ann. §§ 222.01, 222.02, and 222.05.

7.  In the Amended Filing, **KATHLEEN ANNE SMITH CUTULI** failed to disclose the federal income tax refund in the amount of $1,819,068 thereafter deposited into the

Capital Bank Account.

8.     In the Amended Filing, **KATHLEEN ANNE SMITH CUTULI** failed to disclose the Islamorada Property as real property in which she had any interest.

All in violation of Title 18, United States Code, Section 371.

### COUNT 2
#### Fraudulent Transfer and Concealment of Property
#### in Contemplation of a Case Under Title 11
#### (18 U.S.C. § 152(7))

From in or around October 2009, through in or around May 2013, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**KATHLEEN ANNE SMITH CUTULI and**
**GREGORY LEE CUTULI,**

in a personal capacity and as agent of another person, in contemplation of a case under title 11 by **KATHLEEN ANNE SMITH CUTULI**, and with the intent to defeat the provisions of title 11, to knowingly and fraudulently transfer and conceal, and cause to be transferred and concealed, the property of **KATHLEEN ANNE SMITH CUTULI**, that is, a federal income tax refund in the amount of $1,819,068, in violation of Title 18, United States Code, Sections 152(7) and 2.

### COUNT 3
#### Concealment of Property in Connection with a Case Under Title 11
#### (18 U.S.C. § 152(1))

From on or about September 12, 2011, continuing through on or about May 14, 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**KATHLEEN ANNE SMITH CUTULI,**

in connection with a case under title 11, did knowingly and fraudulently conceal and cause to be concealed property belonging to the estate of the debtor, In re: KATHLEEN ANNE SMITH CUTULI, Bankruptcy Case No. 11-35256-AJC, filed in the United States Bankruptcy Court for

the Southern District of Florida, from creditors, the trustee, the United States Trustee, and the United States Bankruptcy Court, in that the defendant concealed and caused to be concealed property, that is, approximately $32,000 of furs and jewelry, in violation of Title 18, United States Code, Sections 152(1) and 2.

## COUNT 4
## Concealment of Property in Connection with a Case Under Title 11
### (18 U.S.C. § 152(1))

From on or about September 12, 2011, continuing through on or about May 14, 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### KATHLEEN ANNE SMITH CUTULI,

in connection with a case under title 11, did knowingly and fraudulently conceal and cause to be concealed property belonging to the estate of the debtor, In re: KATHLEEN ANNE SMITH CUTULI, Bankruptcy Case No. 11-35256-AJC, filed in the United States Bankruptcy Court for the Southern District of Florida, from creditors, the trustee, the United States Trustee, and the United States Bankruptcy Court, in that the defendant concealed and caused to be concealed property, that is, approximately $114,000 of household goods and furnishings, in violation of Title 18, United States Code, Sections 152(1) and 2.

## COUNT 5
## Concealment of Property in Connection with a Case Under Title 11
### (18 U.S.C. § 152(1))

From on or about September 12, 2011, continuing through on or about May 14, 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### KATHLEEN ANNE SMITH CUTULI,

in connection with a case under title 11, did knowingly and fraudulently conceal and cause to be concealed property belonging to the estate of the debtor, In re: KATHLEEN ANNE SMITH

9

CUTULI, Bankruptcy Case No. 11-35256-AJC, filed in the United States Bankruptcy Court for the Southern District of Florida, from creditors, the trustee, the United States Trustee, and the United States Bankruptcy Court, in that the defendant concealed and caused to be concealed property, that is, approximately $117,404 in cash, in violation of Title 18, United States Code, Sections 152(1) and 2.

## COUNT 6
### False Oath and Account in Relation to a Case Under Title 11
### (18 U.S.C. § 152(2))

On or about September 12, 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**KATHLEEN ANNE SMITH CUTULI,**

knowingly and fraudulently made a false oath and account in and in relation to any case under title 11, In re: KATHLEEN ANNE SMITH CUTULI, Bankruptcy Case No. 11-35256-AJC, filed in the United States Bankruptcy Court for the Southern District of Florida, by declaring in Schedule B that she had approximately $250 of furs and jewelry, $0 of household goods and furnishings, and $9,000 in cash, when in truth and in fact, and as the defendant then and there well knew, she did not have approximately $250 of furs and jewelry, $0 of household goods and furnishings, and $9,000 in cash, in violation of Title 18, United States Code, Section 152(2).

## COUNT 7
### False Oath and Account in Relation to a Case Under Title 11
### (18 U.S.C. § 152(2))

On or about November 14, 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**KATHLEEN ANNE SMITH CUTULI,**

knowingly and fraudulently made a false oath and account in and in relation to any case under title 11, In re: KATHLEEN ANNE SMITH CUTULI, Bankruptcy Case No. 11-35256-AJC, filed in the United States Bankruptcy Court for the Southern District of Florida, by declaring in Amended Schedule B that she had approximately $250 of furs and jewelry, $0 of household goods and furnishings, and $9,000 in cash, when in truth and in fact, and as the defendant then and there well knew, she did not have approximately $250 of furs and jewelry, $0 of household goods and furnishings, and $9,000 in cash, in violation of Title 18, United States Code, Section 152(2).

## CRIMINAL FORFEITURE ALLEGATIONS

1.      The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for purposes of alleging criminal forfeiture to the United States of America of certain property in which the defendants have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 152, as alleged in this Indictment, the defendants shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, made applicable by Title 28, United States Code, Section 2461(c).

A TRUE BILL,

FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY

MATTHEW J. LANGLEY
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES OF AMERICA        CASE NO. _____

vs.

KATHLEEN ANNE SMITH CUTULI and        **CERTIFICATE OF TRIAL ATTORNEY\***
GREGORY LEE CUTULI,

     Defendants.

_____/

**Superseding Case Information:**

**Court Division:** (Select One)

    New Defendant(s)        Yes _____ No _____
    Number of New Defendants _____
    Total number of counts _____

| | | | | |
|---|---|---|---|---|
| X | Miami | ___ | Key West | |
| ___ | FTL | ___ | WPB | ___ FTP |

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:    (Yes or No)    No
    List language and/or dialect _____

4.   This case will take    6-7    days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | | Petty | |
| II | 6 to 10 days | X | Minor | |
| III | 11 to 20 days | | Misdem. | |
| IV | 21 to 60 days | | Felony | X |
| V | 61 days and over | | | |

6.   Has this case been previously filed in this District Court?   (Yes or No)    No
If yes:
Judge:                        Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?    (Yes or No)    No
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the District of _____
Is this a potential death penalty case? (Yes or No)    No

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to   October 14, 2003?    Yes _____ No _X_

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    Yes _____ No _X_

_____
MATTHEW J. LANGLEY
ASSISTANT UNITED STATES ATTORNEY
FLA BAR NO. 97331

\*Penalty Sheet(s) attached                                         REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:  KATHLEEN ANNE SMITH CUTULI**

**Case No:**

Count #: 1

Conspiracy to fraudulently transfer and conceal property in contemplation of case under Title 11

Title 18, United States Code, Sections 371 and 152(7)

**\*Max. Penalty:**     5 Years' Imprisonment

Count #: 2

Fraudulent transfer and concealment of property in contemplation of case under Title 11

Title 18, United States Code, Section 152(7)

**\*Max. Penalty:**     5 Years' Imprisonment

Counts #: 3-5

Concealment of property in connection with a case under Title 11

Title 18, United States Code, Section 152(1)

**\*Max. Penalty:**     5 Years' Imprisonment

Counts #: 6-7

False oath and account in relation to a case under Title 11

Title 18, United States Code, Section 152(2)

**\*Max. Penalty:**     5 Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:  GREGORY LEE CUTULI**

**Case No:**

Count #: 1

Conspiracy to fraudulently transfer and conceal property in contemplation of case under Title 11

Title 18, United States Code, Sections 371 and 152(7)

**\*Max. Penalty:**     5 Years' Imprisonment

Count #: 2

Fraudulent transfer and concealment of property in contemplation of case under Title 11

Title 18, United States Code, Section 152(7)

**\*Max. Penalty:**     5 Years' Imprisonment


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# United States District Court

## Southern District of Florida

### MIAMI DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | **Case Number - 1:16-20233-CR-ALTONAGA-2** |
| **GREGORY LEE CUTULI** | USM Number: 67108-018 |

Counsel for Defendant:   Khurrum B. Wahid, Esq.
Counsel for the United States:     Michael Nadler, Esq. for
                                                       Matthew J. Langley, Esq.
Court Reporter:   Stephanie McCarn

_____

The defendant pled guilty to Count 1 of the Indictment.
The defendant is adjudicated guilty of the following offense:

| TITLE/SECTION NUMBER | NATURE OF OFFENSE | OFFENSE ENDED | COUNT |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to Fraudulently Transfer or Conceal Property in Contemplation of a Case Under Title 11 | May 2013 | 1 |

The defendant is sentenced as provided in the following pages of this judgment.   The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

Count 2 is dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material changes in economic circumstances.

Date of Imposition of Sentence:
February 24, 2017

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

February 24, 2017

DEFENDANT: GREGORY LEE CUTULI
CASE NUMBER: 1:16-20233-CR-ALTONAGA-2

## IMPRISONMENT

      The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **6 months**.

The Court makes the following recommendations to the Bureau of Prisons:

      The Court recommends the defendant be designated to a facility located in the Middle District of Florida.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons **before 2:00 P.M. on March 17, 2017**, as notified by the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By:_____
Deputy U.S. Marshal

USDC FLSD 245B (Rev. 09/08) - Judgment in a Criminal Case                                                                                    Page 3 of  6

DEFENDANT: GREGORY LEE CUTULI
CASE NUMBER: 1:16-20233-CR-ALTONAGA-2

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **3 years**.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

**The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.**

**The defendant shall cooperate in the collection of DNA as directed by the probation officer.**

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1. The defendant shall not leave the judicial district without the permission of the court or probation officer;
2. The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first fifteen days of each month;
3. The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4. The defendant shall support his or her dependents and meet other family responsibilities;
5. The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6. The defendant shall notify the probation officer **at least ten (10) days prior** to any change in residence or employment;
7. The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8. The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9. The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10. The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11. The defendant shall notify the probation officer within **seventy-two (72) hours** of being arrested or questioned by a law enforcement officer;
12. The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13. As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT: GREGORY LEE CUTULI
CASE NUMBER: 1:16-20233-CR-ALTONAGA-2

# SPECIAL CONDITIONS OF SUPERVISION

The defendant shall also comply with the following additional conditions of supervised release:

**Community Service -** The defendant shall perform **300 hours** of community service as monitored by the U.S. Probation Officer.

**Financial Disclosure Requirement -** The defendant shall provide complete access to financial information, including disclosure of all business and personal finances, to the U.S. Probation Officer.

**Home Detention with Electronic Monitoring -** The defendant shall participate in the Home Detention Electronic Monitoring Program for a period of eight (8) months.  During this time, the defendant shall remain at his place of residence except for employment and other activities approved in advance, and provide the U.S. Probation Officer with requested documentation.  The defendant shall maintain a telephone at his place of residence without 'call forwarding', 'call waiting', a modem, 'caller ID', or 'call back/call block' services for the above period.  The defendant shall wear an electronic monitoring device and follow the electronic monitoring procedures as instructed by the U.S. Probation Officer.  The defendant shall pay for the electronic monitoring equipment at the prevailing rate or in accordance with ability to pay.

**No New Debt Restriction -** The defendant shall not apply for, solicit or incur any further debt, included but not limited to loans, lines of credit or credit card charges, either as a principal or cosigner, as an individual or through any corporate entity, without first obtaining permission from the United States Probation Officer.

**Permissible Search -** The defendant shall submit to a search of his/her person or property conducted in a reasonable manner and at a reasonable time by the U.S. Probation Officer.

**Unpaid Restitution, Fines, or Special Assessment -** If the defendant has any unpaid amount of restitution, fines, or special assessments, the defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay.

DEFENDANT: GREGORY LEE CUTULI
CASE NUMBER: 1:16-20233-CR-ALTONAGA-2

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on the Schedule of Payments sheet.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $100.00 | $25,000.00 | 0 |

\*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994, but before April 23, 1996.

USDC FLSD 245B (Rev. 09/08) - Judgment in a Criminal Case                                          Page 6 of  6

DEFENDANT: GREGORY LEE CUTULI
CASE NUMBER: 1:16-20233-CR-ALTONAGA-2

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

    A.   Lump sum payment of **$25,100.00** due immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

**The assessment/fine/restitution is payable to the CLERK, UNITED STATES COURTS and is to be addressed to:**

       **U.S. CLERK'S OFFICE**
       **ATTN: FINANCIAL SECTION**
       **400 NORTH MIAMI AVENUE, ROOM 8N09**
       **MIAMI, FLORIDA 33128-7716**

**The assessment/fine/restitution is payable immediately.  The U.S. Bureau of Prisons, U.S. Probation Office and the U.S. Attorney's Office are responsible for the enforcement of this order.**

      The defendant shall forfeit the defendant's interest in the following property to the United States:

       **Forfeiture of the defendant's right, title and interest in certain property is hereby ordered consistent with the plea agreement.  If there is to be forfeiture, the United States shall submit a proposed order of forfeiture within three days of this proceeding.**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.